MICHELLE PHILLIPE *v.* FRANCIS J. THOMAS
(2097)

HULL, BORDEN and DALY, Js.

Argued January 11—decision released April 2, 1985

*Jeffrey W. Reinen,* with whom, on the brief, was *Jerome A. Mayer,* for the appellant (defendant).

*John C. Kucej,* for the appellee (plaintiff).

BORDEN, J. This is an appeal[1] from the judgment of the trial court for the plaintiff, entitling her to the return of a deposit paid to the defendant under an agreement to purchase real estate. We find error.

On April 13, 1979, the parties entered into the agreement for the sale of certain real estate from the defendant to the plaintiff for $105,000. The agreement

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c)

contained a mortgage contingency clause conditioning the plaintiff's obligation on her obtaining a commitment for a thirty-year, $84,000 first mortgage at prevailing interest rates, and on such other terms and conditions imposed at the time by any lending institution where the plaintiff made application for the loan. The plaintiff was required by this clause to make immediate application for the loan and to pursue the application with diligence. She had until April 30, 1979, to obtain such a commitment or to inform the defendant that the commitment was not received.[2]

The plaintiff applied for the mortgage at a bank, but was turned down because the amount requested was excessive in view of the bank's appraisal of the property of $100,000. The bank, however, approved an $80,000 mortgage.

The plaintiff requested either an extension of time within which to obtain a mortgage commitment which met the terms of the agreement or a reduction in the

[2] The clause in full provided as follows: "This agreement is contingent upon the Buyer obtaining a commitment for a loan, to be secured by a first mortgage on the premises in the amount of $84,000, at prevailing % interest per annum, to be amortized over a 30 year term and to be on such other terms and conditions, including prepayment limitations, institutional financing charges and interest rate charges, as are imposed by any lending institution where the Buyer makes application for such a loan at the time the Buyer makes such application. The Buyer agrees to make immediate application for such a loan and to pursue said application with diligence. In the event such commitment is not obtained by the Buyer on or before April 30, 1979, the Buyer, to take advantage of this contingency, must cause notice of the Buyer's inability to obtain such a commitment to be given to the Seller, by the Buyer's Attorney. Receipt of such notice by the Seller shall constitute receipt by the Seller of such notice. If the Seller does not receive such notice prior to 5:00 p.m. on said date, this agreement shall remain in full force and effect as if this paragraph had not been included herein. If the Seller does receive such notice prior to 5:00 p.m., on said date, The Seller shall return to the Buyer all sums paid hereunder without interest thereon, and upon receipt of said sums by the Buyer this agreement shall terminate and be of no further force or effect and the Buyer and Seller shall be discharged of all liability, each to the other, hereunder."

purchase price to reflect the bank's appraisal. The defendant refused the plaintiff's requests. On April 30, 1979, the plaintiff timely requested that her deposit be returned. The defendant refused. The court found that the defendant's refusal was based on his realty agent's phone call to the bank requesting that the bank review the plaintiff's application and give her the $84,000 mortgage by changing the appraisal or by giving her a 90 percent MGIC[3] mortgage using the bank's appraisal.

The court concluded that the defendant was obligated to return the plaintiff's deposit because, although the plaintiff made a good faith effort to meet the mortgage condition, the condition was not met. On appeal, the defendant claims, inter alia, that the court applied the wrong legal standard to the plaintiff's efforts to meet the condition. We agree.

The good faith standard was the improper standard with which to test the plaintiff's efforts to obtain a mortgage commitment for two reasons. First, although some courts have interpreted mortgage contingency clauses such as this one to imply that the purchaser will seek to obtain a mortgage commitment in good faith; e.g., *Fry* v. *George Elkins Co.,* 162 Cal. App. 2d 256, 327 P.2d 905 (1958); *Liuzza* v. *Panzer,* 333 So. 2d 689 (La. App. 1976); *Bushmiller* v. *Schiller,* 35 Md. App. 1, 368 A.2d 1044 (1977); see generally 78 A.L.R.3d 880; courts in Connecticut imply a promise that the purchaser will exert reasonable efforts to obtain a mortgage commitment. *Luttinger* v. *Rosen,* 164 Conn. 45, 47, 316 A.2d 757 (1972) (due diligence used in seeking financing); *Lach* v. *Cahill,* 138 Conn. 418, 422, 85 A.2d 481 (1951); *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 A. 277 (1913) (reasonable efforts to fulfill condition precedent implied in contract to purchase stock); see also

---

[3] An MGIC mortgage is one insured by the Mortgage Guaranty Insurance Corporation.

*Osten* v. *Shah,* 104 Ill. App. 3d 784, 433 N.E.2d 294 (1982); *Stabile* v. *McCarthy,* 336 Mass. 399, 145 N.E.2d 821 (1957); see generally 78 A.L.R.3d 880.

Second, the language of this agreement indicates that such a standard was intended. *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981). The clause required the plaintiff to make immediate application for the mortgage on the terms stated in the agreement and to pursue the application "with diligence."[4] The words of the contract must be given their common usage and meaning where possible. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598-99, 424 A.2d 277 (1979). "Diligence," defined by Webster's Third New International Dictionary as "persevering application: devoted and painstaking application to accomplish an undertaking," and as "the attention and care required of a person . . . [as] opposed to *negligence,*" (emphasis in original) implies at the least that reasonable diligence is required. Thus, this contract required that reasonable diligence be used to obtain the mortgage commitment, and that standard is substantially equivalent to the "reasonable efforts" standard implied by our cases.

The difference between the good faith and reasonable efforts standards is the difference between a subjective and an objective standard. " '[G]ood faith' . . . 'in common usage . . . has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.' 35 C.J.S. 488, and cases cited. It has been well defined as meaning 'An honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law,

---

[4] See footnote 2, supra.

together with an absence of all information or belief of facts which would render the transaction unconscientious.' 2 Bouvier's Law Dictionary (3d Rev.), p. 1359." *Snyder* v. *Reshenk,* 131 Conn. 252, 257, 38 A.2d 803 (1944). The determination of good faith involves an inquiry into the party's motive and purpose as well as actual intent. Id., 259. The Uniform Commercial Code, although formally limited to transactions involving personal property, furnishes a useful illustration of the good faith standard. *Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242 (1983); *Iamartino* v. *Avallone,* 2 Conn. App. 119, 125, 477 A.2d 124, cert. denied, 194 Conn. 802, 478 A.2d 1025 (1984). General Statutes § 42a-1-201 (19) defines "[g]ood faith" as "honesty in fact in the conduct or transaction concerned." Under the UCC definition, "good faith" is a subjective standard. It involves a determination of the intent or state of mind of the party concerned, taking into account the actual knowledge of the person as well as his or her motives. *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.,* 187 Conn. 637, 642-44, 447 A.2d 1163 (1982).

Reasonableness, on the other hand, is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. See, e.g., *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 400, 363 A.2d 160 (1975); Calamari & Perillo, Contracts (2d Ed.) § 3-10. In contracts as in tort cases, "[t]he test is external, not subjective; that is, the question is how would a person of ordinary prudence in such a situation have behaved, not how did the defendant in fact behave." *Murphy* v. *Soracco,* 174 Conn. 165, 168, 383 A.2d 1350 (1978). Whether the plaintiff's actions constituted reasonable efforts to satisfy the contractual condition is a factual determination for the trial court.

*Lach* v. *Cahill,* supra; see *Bank of Montreal* v. *Gallo,* 3 Conn. App. 268, 487 A.2d 1101 (1985).

Evidence of what is reasonable, however, may be relevant to determining one's good faith and is not excluded from playing a part in that determination. *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.,* supra, 643–44, 646. Similarly, one's good faith may be relevant in ascertaining the reasonableness of his actions. Calamari & Perillo, Contracts (2d Ed.) § 2-2.

The trial court only determined the good faith of the plaintiff in pursuing the mortgage commitment. Although the defendant moved for rectification, seeking articulation on this point, the trial court declined to state whether the plaintiff's actions constituted reasonable efforts. Thus, there is no factual determination of the reasonableness of the plaintiff's efforts, and there was evidence which could form the basis of a contrary finding.[5] A conclusion of the trial court cannot stand if an erroneous legal standard or rule of law was applied. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); *University of Hartford* v. *Hartford,* 2 Conn. App. 152, 157, 477 A.2d 1023 (1984).

---

[5] For instance, there was testimony from a mortgage officer at the bank that the plaintiff could have obtained a MGIC mortgage commitment of $84,000 at the prevailing rates for such a mortgage, with an interest rate one quarter of one percent higher and an insurance rate one half of one percent higher than the mortgage initially sought. The language of the mortgage contingency clause does not limit the type of mortgage the plaintiff might obtain to a conventional mortgage; its broad language is certainly susceptible of a reading allowing a MGIC mortgage commitment to fulfill the condition. The failure of the plaintiff to pursue this option might, therefore, be seen as unreasonable. Additionally, there was evidence that the defendant communicated, by telegram to the plaintiff's attorney, an offer of a $4000 unsecured loan of his own to supplement the bank's approved $80,000 mortgage, on the same terms and conditions as offered by the bank, but the offer was refused. It is possible that the plaintiff's refusal of the defendant's offer was made in good faith, but that such an action was not reasonable under the circumstances.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.