[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Eleanor Phillimore, brings this action to recover a deposit for the purchase of a home made to the defendant, American Homes, Inc. American Homes is wholly owned by another defendant, Glenn Brier. CT Page 2289 Mr. Brier has also done business as Sun Realty and is named as a defendant in that capacity as well. A full evidentiary hearing was held on February 8, 1991, in which the court heard the testimony of the plaintiff and Mr. Brier as well as that of Scott Brown, a mortgage banker employed by Citytrust. Numerous documentary exhibits were also introduced into evidence.
In the fall of 1988, Mr. Brier's wife, Rae Brier, owned a house in Waterbury. Mr. Brier and his building company had done frequent business with Ms. Brier. Although he had no actual legal title to the house, Mr. Brier undertook to sell it under the rubric of American Homes. The plaintiff, who owned a house next door lived in by her daughter, wished to buy it, and an agreement was born.
On November 5, 1988, the plaintiff and Mr. Brier, in his capacity as president of American Homes, signed a real estate contract. (Plaintiff's Ex. 1.) The contract was drafted by Mr. Brier. In this contract, American Homes undertook to convey the property in question to the plaintiff for the price of $121,900. The plaintiff made an initial deposit of $6,095. The contract contained the following "mortgage contingency" clause:
 This contract shall be subject to [the plaintiff] obtaining a first mortgage from a recognized lending institution in the amount of $60,000.00 for a term of 30 years at a rate not to exceed 10.5 percent per annum. Also the buyer to obtain a first mortgage on [the plaintiff's house next door] in the amount of $50,000.00 for a term of 30 years at a rate not to exceed 10.5% per annum with the seller buying down the rate to 8% for the first year. The proceeds of this mortgage will [be] used to buy [the house being sold.]
Mr. Brier recommended to the plaintiff that she apply for her mortgage at Citytrust. On November 9, 1988, the two parties went to Citytrust to apply for two mortgages, one on each of the properties in question. The two of them had agreed that each would pay the application fee for one mortgage. The plaintiff paid her application fee on November 14, 1988, and an application file was opened. For reasons that do not appear on the record, Mr. Brier's application fee was never paid, and no file was ever opened for a second mortgage application.
Citytrust normally tells its customers that the application process takes 30 to 45 days. By December 9, CT Page 2290 however, it was clear to Citytrust that the plaintiff's application was in trouble. It attempted to call her on December 9, 12, and 15, but was unable to reach her. In the meantime, and apparently quite independently, the plaintiff was having second thoughts as well. On December 13, she left a message on Mr. Brier's telephone answering machine that she could not wait any longer for the mortgage approval, that she requested that her money be refunded, and that she had an opportunity to go into a business venture for which she needed the money. It does not appear that Mr. Brier returned the call. It does not, however, appear that the plaintiff communicated any of her reservations to Citytrust.
On December 19, two significant letters were written. Citytrust wrote to the plaintiff formally denying her application. (Plaintiff's Ex. 7.) The reasons given were her delinquent credit obligations, an inability to verify her residence (she had apparently given her address as the house occupied by her daughter), and an incomplete credit application (this apparently refers to relatively minor details, such as a social security number, omitted from the application). Mr. Brown testified that the most important of these reasons was the delinquent credit obligations. He further testified that in December, 1988, this was not necessarily an insurmountable obstacle and that it could sometimes (but not invariably) be overcome with an explanation. The bank, as described above, had been unable to reach the plaintiff to obtain an explanation and was plainly unwilling to wait any longer.
On the very same day an attorney retained by the plaintiff wrote to American Homes (Plaintiff's Ex. 4) advising it that she "has not received mortgages, as per the mortgage contingency clause in the contract" and requesting a return of the deposit.
The plaintiff never received the Citytrust denial of her application, which was addressed to her at her daughter's residence. A copy was ultimately sent to her attorney on June 19, 1989. In the meantime, her attorney wrote twice more, on March 2 and 13, 1989 (Plaintiff's Ex. 5 and 6), demanding a return of the deposit. This action was filed with a return date of May 1, 1990.
Mr. Brier, in the meantime, diligently attempted to find another buyer for the house. On December 14, 1990, American Homes signed a contract (Defendants' Ex. C) to sell it for $112,000. The property has, however, at all relevant times been owned by Rae Brier. CT Page 2291
Mr. Brier placed the $6,095 deposit in a checking account used by him for a multitude of deposits and expenditures. As of the date of the hearing, the deposit had not been repaid.
The plaintiff's revised complaint contains two counts. (A third count, alleging an unfair trade practice, was withdrawn at trial.) The second count essentially alleges that the defendants, American Homes and Mr. Brier, attempted to defraud the plaintiff because they contracted to sell her a home that they did not own. Mr. Brier testified, however, that he had worked closely with the actual owner (who happened to be his wife) on numerous occasions and that he would have had no difficulty in arranging for title to be transferred to the plaintiff on the closing date had she qualified for a mortgage. The court has not been presented with any evidence to the contrary and finds Mr. Brier's testimony on this point credible. The plaintiff has, consequently, failed to prove her second count.
The plaintiff's first count requires a somewhat more extended discussion. It alleges that she is entitled to a return of her deposit because (a) American Homes failed to pay its application fee for a second mortgage application and (b) Mrs. Phillimore failed to qualify for her Citytrust mortgage and is thus entitled to invoke the mortgage contingency clause.
With respect to the plaintiff's claim that American Homes breached the contract by failing to pay its application fee for a second mortgage application, it is sufficient to note that the contract specified no time by which that application had to be made. The contract was signed on November 5, 1988. On December 13, 1988, Ms. Phillimore called Mr. Brier to tell him that she no longer wished to go forward with the contract. Mr. Brier's tardiness (if it can be called that) did not, in fact, slow any relevant timetable by one microsecond since Ms. Phillimore's first mortgage application was at that time in the process of failing because of its own deficiencies. There is no evidence that Ms. Phillimore at any time demanded that American Homes pay its application fee for the second mortgage application in a speedy fashion. For these reasons, the plaintiff's claim that the failure to pay the second application fee constituted a breach must fail.
The mortgage contingency clause implied a promise by the plaintiff that she "would make reasonable efforts to CT Page 2292 secure a suitable mortgage." Lach v. Cahill, 138 Conn. 418,422, 85 A.2d 481 (1951). The question is whether the efforts that she did, in fact, make were reasonable ones. The standard is an objective one, "involving an analysis of what a person with ordinary prudence would do given the circumstances." Phillipe v. Thomas, 3 Conn. Appl. 471, 475,489 A.2d 1056 (1985).
Three relevant cases guide the court's determination. Lach v. Cahill, supra, involved a young attorney (viewed with obvious sympathy by the court of elderly judges) who applied for a mortgage loan at a total of six different banks and lending institutions and was turned down by all of them. The trial court's determination that these efforts were reasonable was held to be proper. In Luttinger v. Rosen,164 Conn. 45, 316 A.2d 757 (1972), a would-be buyer applied for a mortgage at the one and only bank which at that time would give the sort of mortgage loan contemplated in the contract but failed to get a commitment meeting the contract requirement. He was held not to be required to apply to other lending institutions on the ground that "[t]he law does not require the performance of a futile act." Id. at 47. In Phillipe v. Thomas, supra, a would-be buyer again applied to a single bank and was turned down. Here, however, there was no showing that an application to another bank would be a futile act. The trial court's decision that the deposit should be refunded was reversed because it was based on an improper standard.
The court's decision here must plainly turn on the specific facts of the case. Ms. Phillimore made a mortgage application to a single bank. There is no evidence in the record to suggest that an application to a second bank would have been a futile act. Moreover, her application to the first bank was not pursued with any discernible vigor. She gave the bank the wrong address, could not be reached by telephone, and made no effort to contact the bank prior to its decision to deny her application. On the contrary, by the time the bank made this decision she had already decided not to further pursue the mortgage process. The court concludes that these were not reasonable efforts. Ms. Phillimore is not entitled to invoke the mortgage contingency clause, and her claim for a return of the deposit must fail.
American Homes has filed a counterclaim alleging that it incurred various losses because of Ms. Phillimore's nonperformance of her contractual obligations. American Homes, however, has failed to prove that it has suffered any losses. Whatever losses have been suffered have been CT Page 2293 suffered by Rae Brier, who has owned the home in question at all relevant times and is not a party to this action. "It is a fundamental concept of judicial administration . . . that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered." Belford v. City of New Haven,170 Conn. 46, 52-53, 364 A.2d 194 (1975). American Homes has not suffered any injury for which Ms. Phillimore can be held accountable. The counterclaim must accordingly be denied.
For the pregoing reasons, both the plaintiff's claims and the defendant's counterclaim are denied. No costs are awarded.
Dated at Waterbury this 15th day of March, 1991.
Jon C. Blue Judge of the Superior Court