[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiffs, Lewis A. Capuano and Ruth Capuano, seek rescission of a Purchase and Sale Agreement (the "Agreement") and the return of monies and other consideration paid by them to the defendant pursuant to the Agreement. On May 10, 1988, the parties entered into the Agreement whereby the plaintiffs agreed to purchase 50% of the shares of Nifosi Travel Agency, Inc. (the "Corporation") for $50,000. The purchase CT Page 8527 was to be paid with $35,000 in cash and a promissory note for $15,000. The Corporation operated a travel agency in Hartford, Connecticut (the "travel agency").
The Agreement contained the following provision:
 "Contingency. This Agreement shall be contingent upon Buyer obtaining transfer of all applicable licenses and/or all necessary approvals as an authorized Travel Agency operator, particularly from the A.R.C. In the event any such approvals or transfers are denied, Seller shall return all funds received and Buyers shall transfer shares to Seller."
The A.R.C. referred to in the contingency clause stands for the Airline Reporting Corporation, whose authorization was essential to the operation of the travel agency. Without A.R.C. authorization, the travel agency could not issue airline tickets. Issuing such tickets comprised a major portion of the travel agency's business.
Prior to the execution of the Agreement the defendant informed the plaintiffs that the A.R.C. required a performance bond as a condition of granting its authorization to the travel agency. The defendant informed the plaintiffs that obtaining the bond was a routine matter.
After the plaintiff's signed the Agreement and provided the consideration due thereunder, they began the process of obtaining approval from the A.R.C. The first step in this process was obtaining a performance bond. The plaintiff's applied to three different insurance companies to obtain a performance bond. All three insurance companies refused to issue a bond on the basis of the plaintiffs' personal financial statement alone.
While they were attempting to secure the bond the plaintiffs learned for the first time that in order to obtain a bond, they would need cash in the amount of $67,200.00. The plaintiffs also learned for the first time that the existing A.R.C. bond for the travel agency was backed by a letter of credit which was secured by a bank account in the amount of approximately $37,000, which account was not owned by the Corporation, but by the defendant's parents.
The plaintiffs did not apply for A.R.C. authorization because they were unable to obtain the necessary performance bond.
The defendant claims that contemporaneously with the Agreement she and the plaintiffs entered into an oral agreement CT Page 8528 that they would each provide one-half of the amount necessary to secure a performance bond. There was evidence that at different times after the Agreement was executed each of the parties expressed a willingness to contribute one-half of the amount necessary to obtain the performance bond. However, the parties never mutually agreed to such contribution. When the plaintiffs offered to make such contribution, the defendant was not prepared to do so and when the defendant was prepared to contribute, the plaintiffs were not willing to make a contribution. Moreover, there was no evidence that the parties intended the alleged oral agreement concerning the performance bond to vary the terms of the Agreement.
By letter dated October 17, 1988, the plaintiffs advised the defendant that they intended to rescind the contract. They offered to return their shares in the Corporation in exchange for return of the $35,000 paid to the defendant and the $15,000 promissory note. The defendant failed to return either the money or the promissory note.
The Agreement was specifically contingent upon the plaintiffs obtaining A.R.C. approval. The plaintiffs made reasonable efforts to obtain such approval. See Phillipe v. Thomas, 3 Conn. App. 471, 475 (1985). In order to obtain the approval, the plaintiffs would have had to produce an additional amount of $67,200 to secure the performance bond. That amount was more than the total consideration paid under the Agreement. Nothing in the Agreement required the plaintiffs to pay the additional sum to secure the performance bond.
The defendant argues that the plaintiffs never applied for the A.R.C. authorization and, therefore, that authorization was never "denied" within the meaning of the contingency clause in the Agreement. The court finds that the plaintiffs never applied for A.R.C. authorization because such application would have been futile in light of their inability to obtain a performance bond. The law does not require an act which is a mere futility. Luttinger v. Rosen, 164 Conn. 45, 47, 316 A.2d 759 (1972); Vachon v. Tomascak, 155 Conn. 52, 57, 230 A.2d 5 (1967).
The Agreement was specifically contingent upon the plaintiffs obtaining A.R.C. authorization. The plaintiffs did not receive such authorization and, therefore, the Agreement is subject to being rescinded. The plaintiffs have offered to return their shares of stock in the travel agency to the defendant. They have, therefore, satisfied the condition precedent to seeking rescission.
Based on the foregoing, the court orders that the Agreement is rescinded and that in order to restore the plaintiffs CT Page 8529 to their condition prior to the Agreement's execution, the defendant pay to the plaintiffs $35,000 plus interest; at the rate of 10% per annum from October 17, 1988 and return to the plaintiffs the promissory note dated July 28, 1988 in the amount of $15,000.00.
BY THE COURT, AURIGEMMA, JUDGE.