[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 23, 1996
This dispute concerns a deposit or downpayment given by a buyer to the owner of commercial real estate, and whether it should be refunded to the buyer upon his alleged inability to satisfy a mortgage contingency clause contained in the contract of sale. The plaintiff, A. Joseph Lipton, contracted to purchase premises owned by David Cleveland, the defendant, located at 15 CT Page 5607 Rockland Road, South Norwalk.
The plaintiff filed a three-count complaint. In the first count, the plaintiff alleges that in May, 1994, he signed a contract with the defendant to purchase the subject premises, and that he gave the defendant an $80,000 deposit. The plaintiff further alleges that the contract was contingent upon his "obtaining a commitment for a loan, to be secured by a first mortgage on the Premises, in the amount of $720,000.00 at the prevailing rate of interest . . . to be amortized over a 30-year term . . . Buyer agrees to make immediate application for such a loan and to pursue said application with diligence." The plaintiff contends that he was unable to obtain such a mortgage, but that the defendant refuses to return the $80,000 down payment. In the second count, the plaintiff alleges that he has a lien on the subject premises, and in the third count of the complaint, the plaintiff seeks attorneys fees as provided in the contract.
The defendant denied the material allegations of the complaint, and filed a special defense and a counterclaim. In his special defense, the defendant claims that the plaintiff did not apply for a mortgage or, if he did, that the plaintiff did not pursue the application with diligence as required by the contract. In the first of the two counts of his counterclaim, the defendant alleges that because the plaintiff did not make an immediate application for a mortgage loan and did not proceed with diligence in obtaining financing, he is entitled to retain the downpayment as liquidated damages. In the second count, the defendant claims that the plaintiff breached the contract of sale, and that he is entitled to recover attorneys fees.
This case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following pertinent findings of fact: (1) that the plaintiff was seeking commercial real estate in order to locate a candy manufacturing business; (2) that the mortgage contingency clause in the contract had to be exercised prior to October 1, 1994; (3) that plaintiff sought aid from the Connecticut Department of Economic Development (CDED), and from the Connecticut Development Authority (CDA), which provide financial assistance to businesses in the form of grants and direct loans or loan guarantees, respectively; (4) that the plaintiff did diligently seek CT Page 5608 assistance from CDED and did submit a business plan to that agency; (5) that the plaintiff was advised by CDA that it would only give him a loan after he had first obtained private financing; (6) that although CDA gave to the plaintiff the names of three area banks, the plaintiff did not approach any of those banks, nor did he ever submit a formal loan application to any bank or to any other lender, either private or governmental; (7) that the plaintiff did contact Shawmut and Lafayette American Bank in this state and Merchants Bank of New York, but was advised that they would not make a ninety per cent loan for a thirty-year term; (8) that the plaintiff did not submit a formal loan application to either CDED or CDA, although he did apply for a grant from CDED for $400,000, and was rejected; (9) that the plaintiff sent the defendant a copy of a letter from Shawmut stating that it could not offer plaintiff a loan of $720,000, but did not refer to any term, amortization period or rate of interest; (10) that the contract of sale provided that if the plaintiff defaulted and breached the contract, the defendant could retain the $80,000 deposit as liquidated damages; and (11) that the contract or sale provided that in the event of litigation the prevailing party was entitled to his attorneys fees.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) plaintiff did not diligently or immediately pursue a mortgage loan; (2) plaintiff did not prove that it would have been futile to submit a mortgage loan application to any bank; (3) although it was highly unlikely that a bank would make a loan of 90% for a thirty year term, it was "less clear" that it would not make a loan providing for thirty-year amortization but over a shorter term; (4) because the plaintiff breached his obligation of a diligent and immediate pursuit of a mortgage loan, the defendant was entitled to retain the $80,000 down payment as liquidated damages; and (5) the defendant was entitled to recover attorneys fees in the amount of $7,768 as provided in the contract of sale.
The plaintiff moved to correct the referee's report pursuant to Practice Book § 438 to reflect that: (1) all three banks that the plaintiff contacted told him that they could not provide a 90% loan with a 30-year term for commercial property; (2) the plaintiff acted diligently by submitting a thorough Business Plan to CDA, and that such plan is a part of the loan application process; (3) CDA had a long-standing policy of not granting loans to be amortized over a 30-year term or guaranteeing such a loan, CT Page 5609 and a formal application to the agency would have been futile; (4) no Connecticut bank would provide a loan of 90% of the value of property to be amortized over a 30-year period or a lesser term or period of years; (5) the plaintiff attempted diligently to obtain the mortgage financing described in the contingency clause in the contract until he realized that his efforts would be futile; (6) the mortgage contingency clause in the contract referred to the loan being amortized over a 30-year term, meaning that the loan should contain both of those provisions, 30-year amortization and over a 30-year period of time; (7) there was a strong likelihood that an application by the plaintiff to Shawmut, Lafayette or Merchants in New York, or to any other bank, for a 90% loan to value ratio to be amortized over a 30-year term, would have been rejected and that an application for such a loan would therefore have been futile.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any changes in his conclusions or his recommendation to the court that judgment enter for the defendant with respect to both the complaint and the counterclaim. The referee did, however, make several changes to the findings of fact contained in his report as a result of the plaintiff's motion. The referee did agree with the plaintiff that: (1) all three banks that the plaintiff contacted advised that a 90% loan for thirty years could not be provided; (2) a Business Plan of the type submitted by the plaintiff is a required component of a loan application at CDA; (3) CDA as a matter of policy did not make loans of the type described in the mortgage contingency clause, and its senior vice president testified at the trial that he could not recall any bank offering a thirty-year amortization for a commercial loan; (4) the mortgage contingency clause refers to both a thirty-year amortization and a thirty-year term, but the referee did note that the Business Plan submitted to CDA referred to a fifteen-year term; (5) Shawmut would have rejected the mortgage loan application in question; (6) there was a "high probability" that Lafayette, Merchants or any other lender in Connecticut would have rejected the plaintiff's application, but nevertheless there was a possibility of obtaining such a loan; and (7) "commercial loans with a 90% loan to value ratio amortized over a thirty-year term generally were not offered in the marketplace during the operative time period." The referee reiterated, however, the facts in his report that the plaintiff did not apply to CDA for either a direct loan or a guarantee of a private loan, and that he did not file an application for a mortgage loan with any CT Page 5610 lending institute. The referee also noted that submitting a business plan to CDA seeking a grant is not the same as applying for a loan. The referee reiterated that these facts led to his conclusion that the plaintiff did not prove that no bank would offer him a loan of the type sought by plaintiff, or that it would have been futile to submit such an application.
Regarding this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court recently reiterated in Elgar v. Elgar, 238 Conn. 839,848-49 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous When there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoRomano v. Derby, 42 Conn. App. 624, 626 (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, in addition, whether "[t]he conclusions drawn therefrom were legally and logically correct." As stated in Romano v. Derby,supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the first task of determining whether there is support in the record for the factual findings of the referee, the CT Page 5611 plaintiff filed exceptions to the referee's report pursuant to Practice Book § 439. These exceptions repeat the plaintiff's contention that it would have been futile to make a formal application to a lending institution after he determined that no bank would make such a loan to him. The plaintiff further noted that the referee agreed with him that an application to Shawmut "would have been denied," and the plaintiff argues that he had no obligation to seek out other banks. The plaintiff also submitted the required transcript of the evidence that was introduced at the two-day trial before the attorney trial referee. A transcript is needed to determine whether the referee's factual findings are supported by the record, but in this case the parties do not disagree about the facts, but rather about the ultimate conclusion that should be drawn from the facts.
In addition to insuring that the factual findings are supported by the evidence introduced at trial, the court in reviewing an attorney trial referee's report must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Inc.,23 Conn. App. 741, 746, 583A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991). See also Bernard v. Gershmann, 18 Conn. App. 652,656, 559 A.2d 829 (1989). In this regard, the defendant filed objections to the acceptance of the referee's report pursuant to Practice Book § 440 ("A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted"). "Section 440, however, cannot be used to attack findings of fact." Iroquois GasTransmission System v. Mileski, 43 Conn. App. 47, 51 (1996).
The objections filed by the plaintiff in this case, which are also included in his motion to correct, relate essentially to the following contention, which neatly sums up the controversy: "[t]he subordinate facts contained in the Corrected Findings . . . lead [inevitably] to the conclusion that had the Plaintiff filed an immediate application for the mortgage set forth in the contingency clause and diligently pursued the same that effort would have been futile."
Thus, the motion to correct, the exceptions and the objections filed by the plaintiff present this issue: did the plaintiff comply with the mortgage contingency clause when he did CT Page 5612 not file any application for a mortgage, but where the referee found as a fact that an application to Shawmut "would have been denied," and that "commercial loans with a 90% loan to value ratio amortized over a 30-year term generally were not offered in the marketplace during the operative time period?"
The issue in this case is also succinctly stated by the referee in his finding that "[a]lthough there was a possibility that one or more lenders in Connecticut might have been offering the type of loan sought by Plaintiff, had Plaintiff filed an application with any individual Connecticut Bank for a direct loan in the amount of $720,000 amortized over a 30-year term there is a high probability that the application would have been rejected."
Luttinger v. Rosen, 164 Conn. 45, 316 A.2d 757 (1972), has been cited for the proposition that "[t]he law does not require the performance of a futile act." Id., 47. In that case, an application for a mortgage, which would have satisfied the contingency clause in the contract, was rejected by a New Haven bank. The buyers did not apply to any other bank because "the application was made to the only bank which might satisfy the mortgage conditions of the contingency clause at that time." Id.
The court concluded that this represented due diligence and that the buyers were entitled to a refund of their deposit and that further applications to other banks were not required.
The issue of whether the plaintiff exercised due diligence under the circumstances also involves the standard by which his conduct is to be evaluated. Phillipe v. Thomas, 3 Conn. App. 471,474-75, 489 A.2d 1056 (1985), rejects a subjective or good faith standard in favor of a "reasonable effort" standard. "Reasonableness . . . is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. In contracts, as in tort cases, [t]he test is external, not subjective; that is, the question is how would a person of ordinary prudence in such a situation have behaved, not how did the defendant in fact behave." (Citations omitted; internal quotation marks omitted.)
Luttinger v. Rosen, supra, 164 Conn. 45, cited by the plaintiff in support of his claims, is distinguishable because the plaintiff in this present case never filed an application for a mortgage loan with any institution. In Luttinger, the buyers CT Page 5613 applied for a loan and were rejected. An informal inquiry of just three banks, none of which was one of the banks suggested to the plaintiff is not a reasonable effort. Furthermore, the referee found that although there was a possibility that a loan application would be rejected, there was a possibility of obtaining a loan. In order to proclaim the act of applying for a mortgage to be futile, the plaintiff would have to demonstrate that there was no possibility of obtaining a loan, and the plaintiff did not do so. In summary, the court agrees with the attorney trial referee that the plaintiff did not "make reasonable efforts to secure a suitable mortgage." Lach v.Cahill, 138 Conn. 418, 422, 85 A.2d 481 (1951).
As to the counterclaim, the defendant is entitled to retain the down payment as liquidated damages for the reasons stated above. Therefore, as to the plaintiff's complaint, judgment is entered in favor of the defendant. Judgment is entered in favor of the defendant with respect to his counterclaim in the amount of $7,768, representing his attorneys fees, as authorized by paragraph 19 of the contract of sale. Costs shall be taxed by the clerk.
LEWIS, J.