[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 10, 1997
The plaintiff, Jack L. Mucha, has brought this action against the defendant, Richard L. Brown, to recover the principal of a $60,000.00 loan which he made to the defendant on or about May 7, 1987, under an oral agreement between them that was never reduced to writing, that the proceeds of the loan would be used by the defendant to purchase, renovate and sell a house located at 81 Acorn Road in East Dennis, Massachusetts. The parties agreed that the principal amount of the loan would be paid by the defendant upon the resale of the property which was to be purchased, but because the property was not sold as originally contemplated by the parties, the plaintiff instituted this action in October, 1991, in which he seeks to recover the amount of the loan together with interest that he claims has accrued pursuant to the terms of the original agreement.
Pursuant to the court's request prior to trial, counsel for the parties filed a stipulation of facts and they also agreed that the testimony of the parties given at a hearing before an attorney trial referee on July 9, 1993, could be reviewed and considered by the court in making its findings of fact. Accordingly, the facts as stipulated by the parties and the facts found by the court based upon the prior hearing before the attorney trial referee and supplemented by further testimony given at the trial on July 19, 1996, may be summarized as follows.
The parties had been close personal friends for a number of years and from the time they first met in 1981, Brown had not been working since 1975 and had no income other than the social security payments that he received because he was totally disabled. The defendant had no prior experience in real estate CT Page 7246 investment or development and he used the proceeds of the loan to enter into a joint venture with two other individuals, Dean Martin, a builder, and David Mann, a local realtor who lived and maintained his office within a few miles of the property in East Dennis.
The proceeds of the loan were put into a trust designated as "BMM Realty Trust" which was created by the three original investors for the purpose of buying and improving the property, and when Martin subsequently withdrew from the venture, Brown and Mann became equal owners of the trust. At the time that the loan was made by the plaintiff the reasonable expectation of the parties was that there would be an early sale, and because Mucha knew that Brown had been disabled from working for many years and was receiving social security benefits, it was reasonable for both parties to assume that the only source of income practicably available to the defendant for the prompt repayment of the principal of the loan would be the proceeds of the resale of the property after it had been acquired, improved and placed on the market.
The three original participants in the venture entered into the trust agreement after consulting a Massachusetts attorney who advised them that title to the property should be taken in the name of the trust, and although Brown testified that he was not aware of it at the time, the trust instrument made no provision for the repayment of the loan that had been made to him by Mucha. Brown also testified that in the fall of 1987 after their first attempt to sell the property was unsuccessful, they tried to get a mortgage on the property to pay off the loans to Brown from his sister-in-law and Mucha but were not able to do so, and he also stated at the 1993 hearing and at the trial, that the property was listed for sale, and that he hoped it would be sold, but that Mann's cooperation and consent as an equal owner of the property would be required before a sale could be consummated.
In addition to the agreement between the parties that the principal of the loan would be due and payable upon the sale of the property to be purchased, it was also agreed that in the interim the defendant would make monthly interest payments in an amount sufficient to cover the plaintiff's monthly interest payments on equity loans he had taken from two banks in order to obtain the principal amount of the loan. The original amount of the monthly payment was $600.00, representing the actual interest due on those loans at that time because it was the expectation of CT Page 7247 the parties that the property would be fixed up and turned over quickly within two to four months.
In January of 1989, after the plaintiff told the defendant that the interest on his loans had increased to $620.00 a month, the defendant increased his payments to that amount and continued those payments until June of 1990. He later made two partial payments of $230.00 each on August 9, 1990 and September 1, 1990, but he was unable to make any more payments thereafter because he had run out of money after exhausting his credit and equity loan limits.
After the property at 81 Acorn Road in East Dennis was purchased and renovated, it was placed on the market, and because a purchase offer and deposit was accepted on June 1, 1987, the property was taken off the market for three or four months thereafter, but the prospective buyers failed to qualify for a mortgage. Although the property was again placed on the market in the fall of 1987, Brown testified at the hearing before the attorney trial referee (Transcript, July 9, 1993, p. 15) that "the bottom dropped out of the real estate market [and] fifty-six thousand homes went up for sale on the Cape at that period."
In June of 1991, the plaintiff paid off both of the bank loans that had been the source of the money that he had loaned the defendant, and thereafter he had no further interest payments to make to the banks on those loans. The defendant was not aware of that fact until Mucha testified at the hearing before the attorney trial referee on July 9, 1993.
In the summer of 1991, the plaintiff went to Cape Cod to investigate the status of the property and found that it was not listed for sale at that time because Mann, the realtor and partner of the defendant in the trust, had taken it off the market and rented it to a family that was living in the house at the time. After the plaintiff told the defendant what he had learned, Brown told him that he knew nothing about it, and he thereafter listed it for sale, but the property has yet to be sold.
The plaintiff argues that first, the defendant was given a reasonable time in which to sell the property, because excluding the four month period that both parties originally expected it would take to repay the loan from the proceeds of the sale, four years had elapsed before this action was instituted by the CT Page 7248 plaintiff, second, the defendant has not proved that any supervening event was sufficient to have prevented and thus excused the non-occurrence of the condition, and third, the condition was waived in any event because of the defendant's failure to make reasonable efforts to sell the property. The defendant's arguments are, first, because the plaintiff had no reasonable expectation that the defendant had any means for repayment other than from the sale proceeds, the plaintiff must prove that Brown is presently able to do so; second, the contingency was not totally within his control because any sale would require the consent of David Mann to the terms and conditions of any such sale; and third, the court cannot, as the plaintiff suggests, change the original agreement so as to impose a duty on the defendant to repay the loan within a reasonable time despite the fact that the event contemplated by the parties has not yet occurred.
A condition is an event which the parties intend must take place before there is a right to performance, and it is distinguishable from a promise in that it does not create a right or duty in and of itself but is merely a limiting or modifying factor. Lach v. Cahill, 138 Conn. 418, 421 (1951). Whether a provision in a contract is a condition precedent to a right of recovery depends on the intent of the parties as evidenced by their agreement; Strimiska v. Yates, 158 Conn. 179, 185-86
(1969); and as a general rule such conditions must be exactly fulfilled before liability may be imposed because the condition qualifies and limits the obligor's promise which is not broken until the condition has happened or the event has occurred.Sheketoff v. Prevedine, 133 Conn. 389, 393 (1947).
The defendant's first claim is that under the facts of this case the plaintiff had no reasonable expectation that the defendant would be able to repay the loan unless the property was sold, and that therefore the burden is upon the plaintiff to show that Brown is presently able to pay the debt that is the subject of this action. He relies on the majority rule which prevails in most jurisdictions that a promise to pay when the promisor "is able", or words to that effect, is a conditional promise to pay, and that the promisee cannot recover unless he can prove that the defendant is able to pay the debt. 17A Am.Jur.2d, Contracts § 498.
The short answer to the defendant's argument is that the prevailing rule that he seeks to have the court apply to the CT Page 7249 facts of this case has not been followed by our Supreme Court in at least two cases dealing with a promise to pay when able, the first one involving a promise to pay "as soon as possible";Norton v. Shepard, 48 Conn. 141 (1880); the second, a promise made by a prospective purchaser of real estate that he would pay the agreed purchase price when he "could spare the money".Griffin v. Smith, 101 Conn. 219 (1924). In both of those cases the minority view was followed, that is, that such promises are "unconditional and to be performed within a reasonable time [because of their] indefiteness and dependence upon the determination by the promisor as to convenience and ability to pay", and in Booth v. Booth Bavliss Commercial School, Inc.,120 Conn. 221 (1935), the case relied upon by the defendant, the Supreme Court reaffirmed Norton v. Shepard and Griffin v. Smith,supra, when it stated that its decision in Booth, which appeared to follow the majority view, was based on the particular facts of that case in that the question of ability to pay was "so definite as to be practicably capable of proof" and that therefore the holding in that case did not "impinge upon [its] earlier decisions." Id. 229.
The mere fact that a person promises to pay a sum of money when he sells certain property is not conclusive of absolute liability because his promise is contingent upon the happening of a future event. Ewell v. Landing, 85 A.2d 475, 477 (Md. 1952). However, "when a promise is such as to constitute absolute liability, and the parties agree that the debt shall be paid upon the happening of a future event chosen merely as a convenient time for payment, and the event does not happen as contemplated, the law implies a promise to pay within a reasonable time." Id.
Even if it were to be assumed, as claimed by the defendant, that the sale of the property was a contractual condition because there were no other funds available to him for payment, his argument overlooks an obligation that is implicit in all such conditional promises. "Contingency clauses imply a promise that they will be pursued with reasonable effort", and if the evidence establishes that the defendant failed to make reasonable efforts to satisfy the condition, the non-occurrence of the condition does not excuse the defendant's performance. Feinberg v.Berglewicz, 32 Conn. App. 857, 861 (1993).
The reasonableness of a promisor's efforts to satisfy a contractual condition is judged by an objective or external standard, that is, "what a person with ordinary prudence would do CT Page 7250 given the circumstances, without accounting for any particular knowledge or skill." Phillipe v. Thomas, 3 Conn. App. 471, 475
(1985). The defendant's argument, both with respect to the reasonableness of his efforts to sell the property as well as his inability to satisfy the condition that payment be made within a reasonable time, is that it was not within his power to satisfy either condition because David Mann's cooperation and consent were needed by reason of his status as an equal partner in the real estate trust.
The inability to control the actions of a third person whose acquiescence or consent and cooperation is necessary for the performance of an undertaking is ordinarily not considered to be an impossibility that avoids the obligation or excuses liability for its nonperformance. 17A Am.Jur.2d, Contracts § 686. Where a person undertakes unconditionally to do something that is not inherently impossible but which requires the approval of a third party, the contract will not be construed as conditional upon such acquiescence or consent where it subsequently becomes impossible for the promisor to perform his contractual obligation because of the third party's refusal to give his consent.Foreman v. E. Caligari Co., 130 S.E.2d 447, 452 (Va. 1963).
Where the payment of a debt is postponed until the happening of a contingency which is wholly or partially within the control of the promisor, the law requires that the payment be made within a reasonable time, and this principle applies as well in cases where the promise is to pay money when the promisor shall have sold real estate in which he has an ownership interest. Pillsburyv. Taylor, 93 A.2d 102, 105 (Vt. 1952). Performance on his part is not excused even though he remains passive and does nothing to prevent, hinder or delay the sale of the property, because if "the debt is not to become due until the property shall have been actually sold, it may never be collectible," and such a result could not possibly be attributable to the parties or within their contemplation at the time the contract was made. See Duncan Box Lumber Co. v. Sargent, 27 S.E.2d 68, 70-71 (W.Va. 1943).
The defendant raises an additional claim in his post trial brief that the agreement of the parties was that the debt should be paid out of a specific fund, namely, the proceeds of the Massachusetts property, based on the rule that "where a contract requires payment from a particular fund, it cannot be said that the debt is payable within a reasonable time where the source fails without the fault of the promisor." 17A Am.Jur.2d, CT Page 7251 Contracts § 496. It should be noted however that the stipulation of facts filed on January 11, 1995 (¶ 3) states that the parties agreed that the principal of the loan would be payable "upon the sale of the property to be purchased" while the rule relied on by the defendant "does not limit or preclude recovery from other sources when the [fund] fails to materialize unless the agreementexpressly so states." (Emphasis added.) Sunniland Fruit Inc v.Verni, 284 Cal.Rptr. 824, 828, (Cal.App. 1991).
Based upon the facts stipulated by the parties, as supplemented by the facts found by the court as stated herein, and its review of the transcript of the prior hearing before the attorney trial referee, the court finds that the defendant has failed to perform his implied promise to sell the property within a reasonable time of his oral promise to do so on or about May 9, 1987, and also finds that his nonperformance was not legally excused under any of the grounds asserted by the defendant.
Accordingly, the court finds the issues in favor of the plaintiff on the complaint, and judgment may be entered in favor of the plaintiff for $60,000.00, the principal amount of the loan plus $160.00, the balance of the July, 1990 interest payment, and the sum of $6,820.00, which represents the monthly interest of $620.00 per month from August 1, 1990 until June 30, 1991, for a total judgment of $66,980.00.
The amount of interest is based on the plaintiff's computation which appears in the last section of his post trial brief, but it should be noted that in an earlier affidavit of debt dated October 9, 1991, the amount the plaintiff claimed for interest was $6,200.00, and in a later affidavit filed on March 9, 1992, the interest claimed to be due was $11,160.00. The plaintiff is directed to file an affidavit of debt prior to the entry of judgment stating the amount now claimed to be due by way of interest, and if there is no claim for a hearing by either party in that regard, judgment will be entered on the papers in the amount stated herein or by way of a corrected judgment, if necessary.
HAMMER, J.