For the reasons that follow, I respectfully dissent from the majority's opinion which affirms the trial court's decision granting summary judgment.
I agree that the phrase "all commercially reasonable efforts" required Lowe's to make every effort to obtain the required zoning that a reasonable business entity would have made under similar circumstances. However, I disagree with the majority's position that there were no remaining genuine issues of material fact relating to whether appellee met this standard.
Contrary to Lowe's position, this standard is not met simply by demonstrating a good faith attempt to accomplish the specific task. "Good faith" generally means an honest intention by a person to abstain from wrongdoing along with an absence of facts to the contrary. Francis A. Bonanno, Inc. v. ISC Wines ofCalifornia (1989), 56 Ohio App.3d 62, 66. "Good faith * * * in common usage * * * has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." Phillipe v. Thomas (Conn.App.Ct. 1985),489 A.2d 1056, 1059. The determination of good faith involves an inquiry into the party's motive and purpose as well as actual intent. Id.
Alternatively, reasonableness is determined by an objective test and involves an analysis of what an ordinary business entity acting with ordinary prudence would do given the particular circumstances. See id. Although good faith and reasonableness are determined under two different standards, there is necessarily some overlap. See Worth v. Huntington Bancshares, Inc. (1989),43 Ohio St.3d 192, 198 ("Where a contract provides that entitlement to benefits thereunder is contingent on a party's good faith determination, a court reviewing that party's good faith determination should consider not only the party's subjective reasoning but also the facts and circumstances surrounding the determination"). As the court in Phillipe, supra, stated:
 "Evidence of what is reasonable, however, may be relevant to determining one's good faith and is not excluded from playing a part in that determination. Similarly, one's good faith may be relevant in ascertaining the reasonableness of his actions." Phillipe, 489 A.2d at 1060 (Internal citations omitted.)
In support of its contention that there remained various disputed factual issues before the trial court, Castle claims, for example, that although the agreement was entered into in August of 1994, and set a deadline of January 15, 1996 for the rezoning to be completed, Lowe's did not file an application for rezoning until August 9, 1995. Castle claims that by waiting this long to file the application, Lowe's effectively precluded the filing of a new application should the first be rejected, and left insufficient time to pursue an appeal of any adverse decision to the common pleas court. Additionally, Castle claims that Lowe's decision not to file an appeal indicates a failure to use all commercially reasonable efforts, where said decision was made without due consideration and without legal advice.
In response, Lowe's claims that upon the advice of its counsel, it spent the year between the signing of the agreement and its filing of the application engaged in efforts to gain public and political support by working with the community. According to Lowe's, its counsel waited to file an application because the public and political climate spelled defeat for the application at an earlier date. Lowe's also notes that the zoning applications were resolved in just a few weeks so that refiling or the taking of an appeal would have been possible had such a course of action been commercially reasonable. Lowe's also claims that given that an appeal would likely take two years to process, such an option was not reasonable under the time limit imposed by the agreement.
Whether or not an appeal of the zoning decision was commercially reasonable under the circumstances of the instant case remains a question of fact for determination by a jury. Although not binding on this court, I am struck by the similarities between the instant case and Foodmaker, Inc. v.Denney (Md.App. 1976), 360 A.2d 446, the case relied on by the trial court. Foodmaker dealt with a contract for the sale of real property. The contract in question contained a condition precedent which read as follows:
 "This Contract is contingent upon Purchaser's ability to obtain building and sign permits plus site and driveway use for a typical Jack-in-the-Box restaurant within 120 days. Purchaser shall use diligence in pursuing the acquisition of the permits and site use, however, Purchaser may withdraw from this transaction and be released of all liability hereunder should said permits be denied." Foodmaker, 360 A.2d at 448
The purchaser made attempts to obtain the permits, which efforts were rejected by the Baltimore City Department of Housing and Community Development, and, on appeal, by the Commission on Signs. One of the issues raised on appeal was that the purchaser had not acted diligently because it had not sought judicial intervention in an effort to get the permits. In rejecting this argument, the Maryland Court of Special Appeals held that the 120 day time limit in the contract was sufficient to show that at the time of contracting neither party had anticipated a legal challenge, since a judicial procedure could not have been completed within such a time limit.
Although the issue in Foodmaker is similar to that posed by the instant case, the time limit imposed by the instant agreement was considerably more than the 120 days in Foodmaker. At the time of contracting in August of 1994 Lowe's had until January of 1996 to accomplish its task. With a time limit of close to a year and a half, I would not find as a matter of law that neither party intended recourse to a judicial proceeding should it become necessary. Although Lowe's did not pursue an appeal of the decision, reasonable minds could reach different conclusions as to whether or not at the time of entering the agreement, an appeal of an adverse decision to the common pleas court would have been included within the ambit of "all commercially reasonable efforts."
Castle also claims there remained a factual dispute as to whether Lowe's had been negotiating for the South Avenue site prior to denial of the zoning application. Specifically, Castle refers to a letter dated January 8, 1996 from John McGill of Developers Diversified to Michael Miller, representative of Lowe's, which reads as follows:
"Dear Mike,
 "I am just dropping you a note to see if I can receive an update as to where Lowe's stands with regard to our site at the above. As you are aware [through our discussion] we have actively held this opportunity available to Lowe's for in excess of six months. We have even reached a point where we have completed site design, and fine tuned the site plan, pursuant to the information you provided us, and are in a position to start this project, essentially over night. "Our company acquired the real estate and let a contract to commence sitework, the Wal-Mart building, Dick's Sports, Media Play, PetsMart, and the retails as of this date. We continue to have negotiations with a major supermarket of 90,000 sq. ft. which will negate the Lowe's building if we commit to a deal.
 "As you know, we would like to further our relationship with Lowe's and accommodate you at this location, however, we have reached a point where we cannot assure its availability to Lowe's after 01/31/96 so that we may be able to finish the project in an orderly fashion. I do not want this to be taken as an ultimatum, but merely as an effort to show that we are attempting to give Lowe's every opportunity possible.
"I look forward to hearing from you."
Castle argues that this letter is evidence that Lowe's was actively engaged in developing another site, which explains why Lowe's delayed the filing of its application and declined to pursue an appeal. Lowe's responds that the letter in question is dated several months after the zoning application had been turned down, and after the parcel had been tended back to Castle. Lowe's interprets the letter as a solicitation which necessarily shows that Lowe's was not committed to the South Avenue site. Rather, Lowe's asserts that negotiations for the site did not occur until after the zoning authorities had rejected Lowe's application.
In further support of its position, Castle notes that Lowe's failed to inform Daniluk of the terms of the agreement between Castle and Lowe's, or of the deadline of January 15, 1996. Indeed, it was only shortly before the zoning hearing that Daniluk was first shown the agreement. Lowe's concedes this fact, but argues that it was immaterial to the case as there was no evidence suggesting that Daniluk's lack of awareness concerning the terms of the agreement in any way affected Lowe's commitment to the rezoning.
When determining the propriety of an award of summary judgment courts must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion. Stevens Skin Softener, Inc. v. Revco Drug Stores,Inc. (1997), 121 Ohio App.3d 212, 217. Although Lowe's argues that the letter is dated after the zoning application had been rejected, reviewing the letter in a light most favorable to Castle strongly suggests that discussions had been going on between Diversified Developers and Lowe's for more than six months prior to the date of the letter. The letter also permits a reasonable inference that Lowe's had provided Diversified Developers with the information necessary to develop a site plan, which would negate Lowe's claim that the letter was simply a solicitation. Reasonable minds could therefore conclude that Lowe's had indeed been actively engaged in the development of another site during the contract period. Although the development of another site is not necessarily inconsistent with a duty to exert "all commercially reasonable efforts," such evidence creates a disputed factual question as to whether or not Lowe's acted in good faith in its efforts to rezone the Castle property. As already noted, good faith may be relevant in determining whether or not a party's actions were reasonable. Phillipe,supra.
After reviewing the record, I would find that the trial court erred in granting summary judgment in favor of Lowe's. I believe a factual dispute remains as to whether Lowe's was actively seeking to procure the South Avenue site from Diversified Developers during the pendency of the application. In addition, while many of the facts of this case are not disputed, it nonetheless does not appear that reasonable minds could come to but one conclusion on the issue of whether the efforts utilized by Lowe's amounted to "all commercially reasonable efforts." Viewing the evidence in a light most favorable to Castle, it is far from clear that Lowe's was entitled to judgment as a matter of law. Lowe's waited over a year to file its application, arguably because it failed to inform its attorney of the deadline in the agreement. Although Lowe's did not pursue an appeal of the decision, reasonable minds could reach different conclusions as to whether or not "all commercially reasonable efforts" would have included an appeal of an adverse decision to a judicial tribunal.
In addition, when disputed, good faith efforts to satisfy contract conditions are factual issues. Kebe v. Nutro MachineryCorp. (1985), 30 Ohio App.3d 175, 178. Although the instant case Involves "all commercially reasonable efforts" as opposed to "good faith efforts," the nature of the issue is no less a factual one. As the Cuyahoga County Court of Appeals has previously noted in a related context:
 "The nature of the issue involved in the present case, whether the defendant acted in good faith and made reasonable efforts to obtain a loan, is such that summary judgment is ordinarily not a proper vehicle for its resolution. * * * Whether a purchaser made reasonable efforts to obtain financing has been held to be a question that should be submitted to the trier of fact * * *." Clarke v. Hartley (1982), 7 Ohio App.3d 147, 151 (citing Smith v. Currie [1977], 40 N.C. App. 739, 742)
I believe the record in the instant case allows for competing reasonable inferences as to whether or not Lowe's performed "all commercially reasonable efforts." Had the language in the agreement simply required Lowe's to use "reasonable efforts" or "commercially reasonable efforts" to obtain the necessary zoning, I may have been inclined to agree with the majority's decision affirming the trial court's grant of summary judgment. However, I think that the inclusion of the word "all" in the agreement precludes such a finding. It is the duty of a court to give effect to all parts of a written contract, if this can be done consistently with the expressed intent of the parties. Ford MotorCo. v. John L. Frazier Sons Co. (1964), 8 Ohio App.2d 158, 161. This is especially the case where the language in question, agreed to by two sophisticated business entities, has yet to be defined as a matter of law by any Ohio court. Whereas the record is replete with evidence that Lowe's did indeed make commercially reasonable efforts to obtain the required rezoning, the word "all" necessarily focuses our analysis on what Lowe's failed to do. In its judgment entry the trial court found that Lowe's had satisfied the requirement of "reasonable efforts." However, the fact that Lowe's spent substantial sums, hired competent people to assist it in its efforts, and demonstrated a commitment to obtaining the desired outcome, does not, as a matter of law, establish that under the circumstances Lowe's used "all
commercially reasonable efforts." Rather, I would find that such a determination remains a question of fact to be determined at trial.
 ____________________ GENE DONOFRIO, JUDGE