JOB ADISA AYANTOLA *v.* BOARD OF TRUSTEES OF
TECHNICAL COLLEGES
(AC 29034)

Harper, Lavine and Peters, Js.

Argued October 27, 2008—officially released August 18, 2009

*Thomas W. Bucci,* for the appellant (plaintiff).

*Antoria D. Howard,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Margaret Q. Chapple,* assistant attorney general, for the appellee (defendant).

*Opinion*

HARPER, J. The plaintiff, Job Adisa Ayantola, appeals from the judgment of the trial court rendered in favor of the defendant, the Board of Trustees of Technical Colleges, in this action to recover damages for alleged employment discrimination and retaliation in violation of General Statutes § 46a-60. On appeal, the plaintiff claims that the court (1) lacked subject matter jurisdiction over his claims, (2) improperly concluded that he did not establish a prima facie case of retaliation and (3) improperly concluded that the defendant did not retaliate against the him in violation of § 46a-60 (a) (4). In light of the Supreme Court's recent ruling in *Lyon* v. *Jones,* 291 Conn. 384, 968 A.2d 416 (2009), we reject the plaintiff's claim that the court lacked subject matter jurisdiction. In regard to his second claim, we conclude that the court properly determined that he did not establish a prima facie case of retaliation. Because we affirm the conclusion of the court that the plaintiff failed to make out a prima facie case of retaliation, we do not engage in further analysis of the retaliation claim. Accordingly, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff is a deaf black male[1] who was born in Nigeria in 1950. He emigrated to the United States in 1976 to pursue educational opportunities that were unavailable to him in Nigeria. In 1987, the defendant

---

[1] We refer to the plaintiff as a "black male" consistent with the manner that he refers to himself both before the trial court and this court.

hired the plaintiff to work as a sign language-interpreting instructor at Northwestern Connecticut Community College (college). In 1996, nine years after being hired, the plaintiff was promoted to the position of assistant professor. The plaintiff filed complaints with the commission on human rights and opportunities (commission), on September 21, 2000, and July 15, 2002, alleging violations of state and federal antidiscrimination laws. On August 13, 2003, the plaintiff entered into a settlement agreement with the defendant regarding these complaints. Subsequent to the settlement agreement with the defendant, the plaintiff applied for promotion to the position of associate professor. In a letter dated April 22, 2004, the then president of the college, Eileen Baccus, informed the plaintiff that despite a favorable vote of the faculty promotion committee, his promotion was being delayed due to student complaints about the plaintiff. Thereafter, the plaintiff filed a complaint with the commission on May 7, 2004. On June 2, 2004, Baccus received an investigative report prepared by a law firm concerning student complaints against the plaintiff. The authors of the report made no conclusions but documented multiple student grievances against the plaintiff. In a letter dated June 30, 2004, Baccus officially notified the plaintiff that he had been denied promotion to associate professor, encouraging him to focus on specific areas for improvement. Subsequent to this, the plaintiff reapplied for and was granted a promotion to associate professor in April, 2005, by the new president of the college, Barbara Douglass.

On June 21, 2005, after receiving a release of jurisdiction from the commission, the plaintiff brought this action to recover damages resulting from the defendant's failure to promote him to the position of associate professor in June, 2004. On July 11, 2007, following a court trial, the court issued a memorandum of decision

rendering judgment in favor of the defendant. The court concluded that the defendant's failure to promote the plaintiff in June, 2004, was not a result of discrimination or retaliation but, rather, the result of a large number of student complaints regarding the plaintiff's performance.

I

Although the plaintiff initiated these proceedings, he nevertheless asserts that the court did not have subject matter jurisdiction over his action. The plaintiff argues that because he failed to obtain the permission of the claims commissioner prior to bringing this action against the defendant, a state agency, the court lacked jurisdiction to hear the case pursuant to the doctrine of sovereign immunity. We reject the plaintiff's claim.

The question of whether a trial court lacked subject matter jurisdiction involves a question of law over which we exercise plenary review. *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). Sovereign immunity is a common-law doctrine whereby the state, as a sovereign, is generally immune from suit except in certain prescribed instances. Connecticut has long accepted this doctrine. "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued." *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972).

The legislature has provided for a claims commissioner who may, when he deems it just and equitable, authorize suit against the state. See General Statutes § 4-142. This is not the sole means, however, by which a plaintiff can overcome sovereign immunity. Sovereign immunity can also be avoided if the legislature, either expressly or by force of necessary implication, statutorily waives the state's sovereign immunity. *Miller* v. *Egan*, supra, 265 Conn. 314.

The plaintiff did not apply to the claims commissioner before proceeding with his action in the Superior Court. General Statutes § 46a-100 provides in relevant part, however, that "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities . . . and *who has obtained a release from the commission* . . . may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." (Emphasis added.) In *Lyon* v. *Jones*, 104 Conn. App. 547, 554, 935 A.2d 201 (2007), rev'd, 291 Conn. 384, 968 A.2d 416 (2009), this court held that "the provisions of § 46a-100 do not constitute a waiver of the state's immunity." On review,[2] the Supreme Court reversed in part the judgment of this court, holding that "[§] 46a-100 explicitly authorizes a plaintiff to file a discrimination action, *over which the commission has released its jurisdiction,* against the state in Superior Court *without the approval of the claims commissioner.*" (Emphasis added.) *Lyon* v. *Jones*, supra, 291 Conn. 403. Thus, it is clear that after a plaintiff has obtained a release of jurisdiction from the commission, he may proceed with an action in the Superior Court for the judicial district of Hartford, the judicial district in which the discriminatory practice is alleged to have occurred or the judicial district in which the defendant transacts business.

The record reveals that on May 17, 2005, the commission authorized the plaintiff "to commence a civil action against [the defendant] in the Superior Court for the

---

[2] Our Supreme Court officially released its decision in *Lyon* after we heard oral argument and briefs had been submitted in the present case. Both parties conceded in their briefs that the Supreme Court's holding in *Lyon* would likely control the outcome of the plaintiff's jurisdictional claim.

judicial district in which the discriminatory practice is alleged to have occurred or in which [the defendant] transacts business." After receiving this authorization, the plaintiff served the complaint that initiated this action on June 21, 2005, in the judicial district of Litchfield. Having duly obtained authorization from the commission to proceed with a civil action against the defendant, the plaintiff complied with all conditions precedent to jurisdiction under § 46a-100. We thereby reject the plaintiff's claim that the court lacked subject matter jurisdiction.

## II

The plaintiff next challenges the conclusion of the court that he failed to make out a prima facie case of retaliation. We reject this claim.

Under the Connecticut Fair Employment Practices Act (act); General Statutes § 46a-51 et seq.; employers are prohibited from discriminating against an employee on account of their opposition to "any discriminatory employment practices or because such person has filed a complaint [before the commission] . . . ." General Statutes § 46a-60 (a) (4). The act is coextensive with Title VII of the federal Civil Rights Act of 1964, and Connecticut courts therefore look to federal case law for guidance in interpreting the provisions of the act. *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 470, 559 A.2d 1120 (1989).

To establish a prima facie case of retaliation, a plaintiff must show four elements: (1) that he participated in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action against him; and (4) a causal connection between the protected activity and the adverse employment action. *McMenemy* v. *Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001). The court found that the plaintiff satisfied the first three elements of his prima facie case. In its

memorandum of decision, it stated that (1) the plaintiff was engaged in protected activity by virtue of his prior complaint with the commission, (2) the defendant was aware of the complaint and the resulting agreement and was thus aware of the protected activity and (3) the plaintiff suffered an adverse employment action by virtue of his failure to obtain promotion.

In regard to the final element, the court determined that the plaintiff did not prove a causal connection between the protected activity (filing a complaint with the commission in 2003) and the adverse employment action (denial of promotion). The court stated: "The reason for the plaintiff's nonpromotion in [June] 2004 was the spate of student complaints which cropped up in second semester of 2004. In a school such as this, the students are customers who are valuable and in demand. Student complaints are a valid concern of the administration and are a sufficient nondiscriminatory reason for denying promotion."

## A

As a threshold issue, we must resolve the disagreement among the parties as to the proper standard of review. The plaintiff argues that the determination of the court that he failed to prove that he was the victim of unlawful retaliation is a legal conclusion and consequently subject to plenary review. In support of this argument, the plaintiff cites to this court's precedents for the proposition that when the trial court draws conclusions of law, our review is plenary. Although this is undoubtedly true, the plaintiff fails to give any reason *why* a finding of the trial court in regard to the causal element of the prima facie case for retaliation under the act should be considered a legal conclusion. The defendant, on the other hand, argues that whether the plaintiff proved that his failure to obtain promotion was causally related to his protected activity is a question

of fact and thereby subject to the clearly erroneous standard.

We reject the plaintiff's argument and agree with the defendant that the question of causation in a prima facie case of retaliation brought under the act is factual in nature and thereby subject to the clearly erroneous standard of review. As the defendant notes in its brief, our Supreme Court has previously held that inquiries arising under the act into the efficacy of an employer's response to illegal harassment raise a question of fact and are subject to the clearly erroneous standard of review. *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 165, 717 A.2d 1254 (1998). Indeed, our Supreme Court's holding in *Brittell* strongly supports the defendant's position. *Brittell* does not necessarily hold, however, that *all* determinations under the act represent questions of fact. We therefore must engage in further inquiry as to whether the causation element of the prima facie case for retaliation is factual or legal in nature. We conclude that it is a question of fact and, accordingly, apply the clearly erroneous standard of review.

Black's Law Dictionary (7th Ed. 1999) defines "fact" as "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." A *question of fact* is "[a]n issue that has not been predetermined and authoritatively answered by the law." Id. In contrast, a *question of law* is "[a]n issue to be decided by the judge, *concerning the application or interpretation of the law.*" (Emphasis added.) Id.

In the present case, the court correctly identified the legal standard to be applied in determining whether retaliation took place. Neither party disputes that causation is a legal element of proving a prima facie case of retaliation. The question therefore becomes one of application of the law to the facts to determine whether

the plaintiff has made a showing that a causal relationship between the protected activity and the adverse employment action exists.

Black's Law Dictionary alternatively describes a question of law as "a question that the law itself has authoritatively answered, so that the court may not answer it as a matter of discretion." Id. We find that the question of what elements show causation in the context of a retaliation claim has not been so authoritatively answered as to make such an inquiry a question of law. The plaintiff cites *Gordon* v. *New York City Board of Education*, 232 F.3d 111, 117 (2d Cir. 2002), for the proposition that "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

A causal connection can be established indirectly by showing that the protected activity was followed close in time by adverse action; see, e.g., *Reed* v. *A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); but the inquiry into whether temporal proximity establishes causation is factual in nature. There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [protected activity] and an allegedly retaliatory action." *Gorman-Bakos* v. *Cornell Cooperative Extension Assn. of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). The trier of fact, using the evidence at its disposal and considering the unique circumstances of each case, is in the best position to make an individualized determination of whether the temporal relationship between an employee's protected activity and an adverse action is causally significant.

Likewise, the trier of fact is in the best position to determine whether the employer acted with a retaliatory animus. Accordingly, we conclude that the question of whether the causal element of the prima facie case for retaliation has been satisfied is a question of fact and subject to the clearly erroneous standard of review.

B

Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. *Tragakiss* v. *Dowling*, 183 Conn. 72, 73, 438 A.2d 818 (1981). A finding is clearly erroneous when there is no evidence in the record to support it or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Brittell* v. *Dept. of Correction*, supra, 247 Conn. 165.

The court found that the plaintiff entered into a settlement agreement with the commission on August 13, 2003. Eight months later, on April 22, 2004, Baccus informed the plaintiff that a decision regarding his promotion had been delayed. In the letter informing the plaintiff of her decision, Baccus stated that despite the fact that the promotion committee had recommended him for promotion, "[w]e have recently received additional complaints about your classroom teaching performance from a number of students. I cannot in good conscience make a decision respecting your promotion until the complaints have been investigated and disposed of appropriately." The defendant introduced a number of exhibits demonstrating that from October, 2003, to April, 2004, school administrators received multiple complaints from students regarding the plaintiff's

performance. The defendant hired a lawyer, Wendi Kemp, to conduct an investigation into the students' complaints. Kemp met with students and the plaintiff and prepared a thorough report dated June 2, 2004. Kemp determined that there was "a great deal of student dissatisfaction with [the plaintiff's] courses; dissatisfaction that is deserving of further attention." On June 30, 2004, Baccus informed the plaintiff in a letter that she had decided not to recommend him for promotion. In the letter, Baccus encouraged the plaintiff to, among other things, "[p]ositively respond to student concerns in Deaf Culture 2 and ASL Literature courses regarding lack of classroom discussion and lack of interaction with students in these courses." At trial, Baccus testified that the student complaints were "the major factor" in her decision not to promote the plaintiff. The court found that "based on the complaints and the investigative report, President Baccus was justified in failing to recommend the plaintiff for promotion in [June] 2004."

Because of the court's finding that the plaintiff was denied promotion on account of the numerous student complaints made against him, the court reasonably could have concluded that there was no causal connection between the plaintiff's complaint with the commission and the defendant's decision to withhold his promotion. We therefore reject the defendant's claim that the court improperly determined there was no causal connection between his protected activity and an adverse employment action.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Having found that the plaintiff did not even make out a prima facie case of retaliation, we reject without further analysis his third claim, which is that the court improperly concluded that the defendant did not retaliate against him.