JERMAINE D. DEAS *v.* ENRIQUE C. DIAZ ET AL.
(AC 31143)

Flynn, C. J., and Alvord and Hennessy, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 8—officially released June 22, 2010

*Kevin W. Smith,* for the appellant (defendant Transportation General, Inc.).

*John W. Mills,* for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendant Transportation General, Inc., doing business as Metro Taxi (Metro),[1] appeals from the judgment of the trial court denying its motions for remittitur and to set aside the jury verdict, which had been rendered in favor of the plaintiff, Jermaine D. Deas. On appeal, Metro claims that the court improperly denied (1) its motions for remittitur or to set aside the verdict when the jury verdict was excessive and (2) its motion to set aside the verdict when (a) the court made an incorrect evidentiary ruling and (b) the jury failed to follow the court's instructions with respect to a release signed by the plaintiff. We affirm the judgment of the trial court.

The following facts, which are not in dispute, are relevant to our resolution of Metro's claims on appeal. The plaintiff worked as an independent contractor driving a taxi owned by Metro. On the morning of September 30, 2006, the plaintiff was driving west on Boston Post Road in West Haven, when his taxi was struck on the passenger's side by a vehicle driven by Enrique C. Diaz,

---

[1] Enrique Diaz and Valdemar Hernandez also were defendants at trial. Both, however, were defaulted for failure to appear in the trial court, and they are not parties to this appeal. We refer to Metro as the sole defendant in this appeal.

which also had been traveling in a westerly direction in an adjacent lane.[2] A large white van had been backing up in Diaz' lane, and, when Diaz swerved his vehicle to avoid the van, his vehicle hit the plaintiff's taxi. The van sped away, and its operator has not been located. The plaintiff brought an action against Diaz, Valdemar Hernandez, the owner of the vehicle driven by Diaz, and Metro. Diaz and Hernandez were defaulted for failure to appear. The plaintiff brought an uninsured motorists claim against Metro because the owner of the van could not be located. The jury returned a verdict in favor of the plaintiff, finding Diaz and Hernandez 20 percent negligent and Metro, on the basis of the uninsured motorists claim, 80 percent negligent. The jury awarded the plaintiff $25,500 for noneconomic damages and $19,116.50 for economic damages, which consisted of $4116.50 for medical bills and $15,000 for future medical expenses. Metro was awarded $1000 on its counterclaim against the plaintiff for money owed by the plaintiff on his taxi lease. Metro then filed motions for remittitur and to set aside the verdict, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, Metro claims that the court improperly denied its motions for remittitur or to set aside the verdict on the ground that the verdict was excessive. Specifically, Metro argues: "There is no question that the plaintiff incurred $4,116.50 in medical bills regarding this accident. . . . The issue is whether the remaining $15,000 of the judgment for future economic damages is excessive." (Citation omitted.) It also challenges the award of $25,500 for noneconomic damages. The plaintiff argues that there was evidence to support the jury's

---

[2] The vehicle driven by Diaz was owned by Valdemar Hernandez.

award, and, accordingly, the court properly denied the motions. We agree with the plaintiff.

We are mindful of two provisions in our General Statutes that directly relate to our analysis of Metro's claim, neither of which were cited by the parties. First, General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."[3] Second, General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice

---

[3] In 1982, § 52-216a, enacted by Public Acts 1976, No. 76-197, was declared unconstitutional in *Seals* v. *Hickey*, 186 Conn. 337, 353, 441 A.2d 604 (1982). Our Supreme Court struck down the statute on the ground that it gave the trial court unfettered discretion to interfere with and to invade the fact-finding function of the jury by allowing the court to substitute its judgment for that of the jury on the issue of damages. Id., 352–53. "General Statutes [Rev. to 1981] § 52-216a entitled 'Reading of agreements or releases to jury prohibited' provide[d]: 'An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury, except the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. Nothing in this section shall prohibit the introduction of such agreement or release in a trial to the court.' " Id., 341 n.6.

The legislature quickly redrafted the statute in 1982; see Public Acts 1982, No. 82-406, § 3; and our Supreme Court declared the redrafted § 52-216a to be constitutional under *Seals*. *Peck* v. *Jacquemin*, 196 Conn. 53, 67, 491 A.2d 1043 (1985) ("Our decision in *Seals* was released on March 2, 1982, and the legislative response came shortly thereafter in Public Acts 1982, No. 82-406, § 3, now codified as § 52-216a. We now hold that this statute is constitutional under *Seals*.").

to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. . . ." On the basis of these statutes, if we determine that the court properly denied the motion for remittitur claiming an excessive jury verdict, the claim that it also improperly denied the motion to set aside the verdict on the basis of an excessive jury verdict would be moot. Pursuant to § 52-228b, the court may not set aside a verdict solely on the ground that damages were excessive unless it first has ordered a remittitur that the prevailing party has declined to accept.

We now move on to our standard of review regarding the court's denial of Metro's motion for remittitur. Metro argues that our standard of review is plenary. The plaintiff argues that our standard of review is abuse of discretion. Both parties cite to decisions of our Supreme Court to support their respective positions. After reviewing relevant case law, we concede that the standard is not straightforward. See generally *Saleh* v. *Ribeiro Trucking, LLC*, 117 Conn. App. 821, 829, 982 A.2d 178 (*Beach, J.*, concurring, and "writ[ing] separately to discuss the standard of review used in appeals from decisions granting or denying motions to set aside verdicts that are claimed to be excessive"), cert. granted, 294 Conn. 922, 984 A.2d 1083 (2009).

In *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 661–62, 935 A.2d 1004 (2007), a case relied on by the plaintiff, our Supreme Court, quoting other of its decisions, explained the standard of review as follows: "First, the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . Second, the court should not interfere with the jury's

determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . Third, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . The relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake. . . . Furthermore, [t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of § 52-216a] rests solely within the discretion of the trial court . . . ." (Citation omitted; internal quotation marks omitted.) Id.; see also *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 167, 681 A.2d 293 (1996) ("[t]he decision whether to reduce a jury verdict because it is excessive as a matter of law rests solely within the discretion of the trial court, pursuant to . . . § 52-216a" [internal quotation marks omitted]).

Although the court in *Mahon* and *Black* specifically stated that pursuant to § 52-216a, "[t]he decision whether to reduce a jury verdict because it is excessive as a matter of law . . . rests solely within the discretion of the trial court"; (internal quotation marks omitted) *Mahon* v. *B.V. Unitron Mfg., Inc.*, supra, 284 Conn.

662; *Black* v. *Goodwin, Loomis & Britton, Inc.*, supra, 239 Conn. 167; it is not clear how a trial judge who concludes that a verdict that is "excessive as a matter of law" could have discretion on whether to reduce the verdict after making such a conclusion, especially when § 52-216a clearly directs that the court "shall order a remittitur" if it concludes that the verdict is excessive as a matter of law.

In *Vandersluis* v. *Weil*, 176 Conn. 353, 357–58, 407 A.2d 982 (1978), a case relied on by Metro, our Supreme Court, quoting other of its cases, stated: "The amount of the award is a matter within the province of the trier of the facts. . . . Then too, denial by the trial court of a motion to set aside a verdict claimed to be excessive is entitled to weighty consideration. . . . It is with these principles in mind that this court must examine the defendant's claim that the amount of the verdict is exorbitant and unjust in the light of all the evidence. Such a claim raises a question of law. The issue here is not whether this court would have awarded more or less. It is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to offend the sense of justice and compel a conclusion that the jury [was] influenced by partiality, prejudice or mistake." (Citations omitted; internal quotation marks omitted.)

In *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 744, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995), this court, citing the *Vandersluis* case, held: "The defendants' claim that the amount of the verdict is excessive . . . raises a question of law and not of fact, and, therefore, the trial court's denial of the motion for remittitur is subject to our plenary review."

In *Presidential Capital Corp.* v. *Reale*, 231 Conn. 500, 510, 652 A.2d 489 (1994), our Supreme Court stated: "We review the remittitur issue in the context of the

state constitutional right to trial by jury, which includes the right to have the jury, rather than the court, pass upon the factual issue of damages, when there is room for a reasonable difference of opinion among fair-minded [persons] as to the amount which should be awarded. . . . The trial court *may order a remittitur* if it concludes, as a matter of law, that the verdict is excessive." (Citation omitted; emphasis added; internal quotation marks omitted.)

In *Alfano* v. *Ins. Center of Torrington*, 203 Conn. 607, 614, 525 A.2d 1338 (1987), our Supreme Court stated: "When a verdict is excessive as a matter of law, the amount of the *remittitur, which the statutes . . . §§ 52-216a and 52-228b, require to be ordered* before a new trial may be had, rests largely within the discretion of the trial court. Its action is entitled to full support unless it abused its discretion. . . . In determining whether the trial court abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Citation omitted; emphasis added; internal quotation marks omitted.)

In further attempting to reconcile our case law, we look to the case of *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985), in which our Supreme Court analyzed the constitutionality of § 52-216a, as amended by Public Acts 1982, No. 82-406, § 3, after the legislature had amended the statute following our Supreme Court's decision in *Seals* v. *Hickey*, 186 Conn. 337, 353, 441 A.2d 604 (1982), declaring the statute unconstitutional because it gave unfettered discretion to the trial court to interfere with the jury's determination of damages. See footnote 3 of this opinion.

In *Peck*, our Supreme Court explained that "[t]he second and third sentences [of § 52-216a, as amended] are entirely new in language as well as legal effect, when we construe the statute as a whole." *Peck* v. *Jacquemin*,

supra, 196 Conn. 68–69. These sentences provide: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial." General Statutes § 52-216a. The court in *Peck* stated: "The statute struck down in *Seals*, while prohibiting the reading to the jury or introduction into evidence in any other way of the agreements or releases referred, did, nevertheless, provide the following: '[E]xcept the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. . . .' This provision gave the court unbridled discretion in dealing with the verdict and thereby violated the defendant's constitutional right to trial by jury under article first, § 19, of the Connecticut constitution. That language not only no longer appears in the present statute, but the additional language in the second and third sentences, when we view the statute as a whole, offers proper constitutional guidelines to the trial court after the verdict." *Peck* v. *Jacquemin*, supra, 69.

The court then explained: "In § 52-216a as amended after *Seals*, the word 'if' begins the second and third sentences both of which are the same except that the second sentence deals with a verdict found 'excessive as a matter of law' and remittitur and the third sentence deals with a verdict found 'inadequate as a matter of law' and additur. The word 'if,' which is a conjunction, is entitled to be accorded its common meaning here of 'in the event that.' Webster, Third New International

Dictionary, p. 1124; General Statutes § 1-1; see generally *Colt* v. *Hubbard*, 33 Conn. 281, 286 (1866). So interpreted, it introduces the condition or contingency that immediately follows it in the first clause of each of these two sentences. In the event that the court concludes that the verdict is excessive or inadequate 'as a matter of law,' it 'shall order' a remittitur or additur, as the case may be. Where either a remittitur or an additur is ordered, and the party so ordered does not comply, the statute further directs that the court 'shall set aside the verdict' and order a new trial." *Peck* v. *Jacquemin*, supra, 196 Conn. 69–70.

Furthermore, the court stated: "In each of these sentences, the condition imported into the trial court's conclusion of excessiveness or inadequacy is that it must so conclude as a matter of law, prior to proceeding further either by remittitur or additur with the new trial option. The terms as a matter of law are legal terms and, absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . In ascertaining legislative intent [r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense. . . . The requirement, therefore, that this conclusion be reached as a matter of law serves under the circumstances to overcome the defendant's claim [that the statute remains unconstitutional after its amendments]. The legal significance of this requirement is obvious; it does not import unbridled discretion, but rather mandates the correct application of relevant legal principles to circumstances in making the conclusion . . . ." (Citations omitted; internal quotation marks omitted.) Id., 70–71.

The court then went on to explain: "Litigants have a constitutional right to have questions of fact decided

by a jury and that includes the right to have the jury, rather than the court, pass upon the factual issue of damages. . . . The procedure permitted by the present statute does not permit the trial court to invade that function as we found the *Seals* statute did. The trial court now makes its determination as a pure question of law." (Citation omitted; internal quotation marks omitted.) Id., 72.

Looking to the plain language of § 52-216a and the case law that has interpreted it, we conclude that the court's decision on whether to deny or to grant a motion for remittitur because it is excessive "as a matter of law" is entitled to plenary review on appeal; the court's decision as to the amount of the remittitur, if ordered, should be analyzed under an abuse of discretion standard, however. See General Statutes § 52-216a; *Alfano* v. *Ins. Center of Torrington*, supra, 203 Conn. 614 (when verdict excessive as matter of law, remittitur required, precise amount of which is discretionary); *Peck* v. *Jacquemin*, supra, 196 Conn. 72 (whether remittitur required is pure question of law); see also *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 744 (trial court's ruling denying motion for remittitur entitled to plenary review); see generally *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001) (matters of law entitled to plenary review); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000) (same).

Having determined that our standard of review of the court's denial of Metro's motion for remittitur is plenary, we proceed to analyze Metro's claim that the court improperly denied its motion. Metro argues that the verdict was excessive as a matter of law because the evidence did not support the $15,000 award for economic benefits to cover future medical costs or the $25,500 award for noneconomic damages. We disagree.

"Economic damages are defined as compensation determined by the trier of fact for pecuniary losses. . . . Noneconomic damages are defined as compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering. . . . [E]conomic damages are akin to special damages, and noneconomic damages are akin to general damages." (Citations omitted; internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 467 n.1, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001).

During trial, the plaintiff testified that he was twenty-nine years old. He was involved in an accident while driving a taxi on September 30, 2006. The plaintiff stated that he did not feel hurt immediately after the accident, but within a day or two, he was in a "whole lot of pain." He could not sleep, had lower back pain and could not turn his neck. The plaintiff further testified that he did not have health insurance and that he did not have the economic ability to pay for things like magnetic resonance imaging (MRI) scans or X rays. On October 5, 2006, the plaintiff went to see James D. Sorrentino, a chiropractic physician, who was willing to treat the plaintiff despite his lack of health insurance. Sorrentino treated the plaintiff through May 6, 2007, and the plaintiff incurred $4116.50 in medical bills that remained unpaid at the time of trial. The plaintiff testified that he still was experiencing pain, especially in his lower back, at the time of trial and that he continued to experience difficulty sleeping because of the back pain. Sorrentino treated the plaintiff approximately twenty-four times.

Sorrentino's initial report, dated October 5, 2006, stated that the plaintiff had "difficulty sleeping, walking, standing, sitting, lifting, reaching and bending . . . [and that] [a]ll ranges of motion were restricted and

limited due to cervical pain and spasm." Sorrentino diagnosed the plaintiff as having lumbosacral sprain/strain, cervical sprain/strain, brachial radiculitis and thoracic sprain/strain, which were causally related to the motor vehicle accident. In an updated report dated May 7, 2007, Sorrentino stated that the plaintiff's "spine has now been compromised and is not capable of returning to pre-injury status. Statistically, he is predisposed to an accelerated rate of degenerative disc disease and will continue to have pain flare-ups from time to time proportional to increased work activities and requirements, daily living activities and daily stressors; I would anticipate the need for symptomatic care at an approximate cost of $1000-$2000 annually. There has been a disruption of the normal architecture of the spine, which has resulted in musculoligamentous instability."

Although Metro asserts that there was no evidence to support the $15,000 jury award for future medical costs as economic damages or the $25,500 award for noneconomic damages, the evidence cited clearly supports such an award. Sorrentino specifically opined that the plaintiff would incur expenses at a rate of $1000 to $2000 per year throughout his life for medical care due to the accident. At the time of trial, the plaintiff was a young man, only twenty-nine years old. Even using the lower rate of $1000 per year, an award of $15,000 would cover the plaintiff's anticipated medical expenses for a mere fifteen years, until he was in his early forties. Certainly, such an award is not excessive as a matter of law. As to the award for noneconomic damages, the plaintiff testified that he continued to experience pain and trouble sleeping even at the time of trial. Sorrentino reported that the plaintiff's "spine has now been compromised and is *not capable of* returning to pre-injury status." (Emphasis added.) An award of $25,500 for the permanent physical injury suffered by the plaintiff, like

the award for the future economic injury, cannot be considered excessive as a matter of law.

## II

Metro next claims on appeal that the court improperly refused to set aside the verdict when the jury failed to follow the court's instructions with respect to the release that had been signed by the plaintiff. We disagree.

The following additional facts, which reasonably could have been found by the jury, are relevant. Following the accident, the plaintiff desired to return to work because he needed the money. Metro, however, did not respond to his requests. Metro, through an employee, Richard Haskell, told the plaintiff that he could return to work if he signed a release, which the plaintiff signed on November 13, 2006, and which was witnessed by Haskell. The release provided that the plaintiff, in consideration of a payment of $1000, to be applied to the amount he owed on the lease of his taxi, would "release and forever discharge" Metro "from and against all claims, demands, actions and causes of action for damages" arising from the September 30, 2006 automobile accident. Metro, in its amended answer, pleaded this release as a special defense to the plaintiff's complaint. The plaintiff denied the allegation of that special defense and denied that the release applied to claims for uninsured motorists coverage. During trial, the plaintiff argued that the jury should disregard the release because of the difference in bargaining power between the plaintiff and Metro. The court charged the jury on the law regarding the release as pleaded in Metro's special defense, which charge Metro does not allege was improper or imprecise. The jury returned a verdict in favor of the plaintiff and did not find in favor of Metro on its special defense. Metro, inter alia, filed a motion to set aside the verdict, claiming that the jury

did not follow the court's instructions on this special defense. The court denied the motion.

"We review the trial court's action in granting or denying a motion to set aside a verdict by an abuse of discretion standard. . . . A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . This limitation on a trial court's discretion results from the constitutional right of litigants to have issues of fact determined by a jury. . . . An appellate court . . . in reviewing whether a trial court abused its legal discretion, must review the entire record and [all] the evidence. . . . Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will." (Citations omitted; internal quotation marks omitted.) *Visoky* v. *Lavoie*, 64 Conn. App. 501, 504–505, 779 A.2d 1284 (2001).

In its charge to the jury, which charge Metro does not allege was improper, the court instructed in relevant part: "Before I discuss liability for this accident and responsibility, if any, of the various drivers in causing this accident, I must discuss the release which, as I

said, has been mentioned throughout the case. [Metro] . . . has offered into evidence a document, which it claims releases it from any claims the plaintiff . . . might have against [Metro] [which] is a self insurer. Your task is first to read the language of the release carefully. The ordinary rule is that a person who signs a release such as [the plaintiff] has a duty to read a document which he signs and cannot defend against its application by saying he did not read it. However, it is also true that this release was prepared by [Metro] . . . and [the plaintiff] was an independent contractor who supported himself by being able to operate a cab owned by that company. In this regard, you may take that—may take into account the relative bargaining power of the parties if you conclude this is a factor that should be considered regarding the effect of this release in this case. Now, under such circumstances the rule is that [Metro] had an obligation to write a release with clear language that adequately defined the implications of its language, and such a contract is liberally interpreted in favor of a person in [the plaintiff's] position. If there is any doubt as to the meaning of such a document or any ambiguity in its language, then it should be interpreted strictly against the party, here [Metro], [which] drew up the contract. To be affected, you must—to be effective, you must find the language plain and clear. So, you will read the release and decide if it fairly indicated to the plaintiff that he was giving up any personal injury claims against [Metro] as a self insurer and whether the circumstances of his signing the release were conducive to assent to give up such claims. If you find these matters have been proven by [Metro] you will return a verdict in favor of [Metro] but if you find the release should not, for the reasons stated, bar the plaintiff's claim, you may not consider the release for any purpose—but if you find the release should not, for the reasons stated, bar the plaintiff's

claim, you may not consider the release for any purpose in the plaintiff's case against [Metro] . . . ."

Metro seems to argue that the jury did not follow the court's instructions simply because it did not find in favor of Metro. It makes no claim that the court's instructions were improper, and it points us to nothing in the record to support its claim. In its memorandum of decision on Metro's motion to set aside the verdict, the court specifically held: "[G]iven the purpose for which the release was offered, the jury had a right to consider the relative bargaining positions of the parties and the circumstances of its signing." Reviewing the court's instruction and the evidence in this case, we conclude that the court properly denied Metro's motion to set aside the verdict. The jury reasonably could have determined that the release was not enforceable for any of the reasons explained by the court in its instructions to the jury.

## III

Metro next claims that the court improperly "exclude[d] testimony of an ambulance driver and an employee of [Metro] . . . regarding the reason the plaintiff did not return to work in light of the plaintiff's testimony on that issue." Metro argues that such testimony was not hearsay, was not overly prejudicial and that the court should have permitted it. We find this claim to be without merit.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's

ruling only if it could not reasonably conclude as it did. . . .

"Evidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Puchalsky* v. *Rappahahn*, 63 Conn. App. 72, 76–77, 774 A.2d 1029, cert. denied, 256 Conn. 931, 776 A.2d 1147 (2001).

The following facts are useful to our resolution of this claim. William Scalzi, the owner of Metro, testified, out of the presence of the jury, that the plaintiff had returned to work following the accident but that on October 24, 2006, the plaintiff abandoned his taxi at the end of Metro's road and then had some type of a seizure for which an ambulance was called. The next day, the ambulance driver came to Metro's office and gave the plaintiff's license to Metro's operations manager, Gerry Whitcomb. The ambulance driver then told Whitcomb that the plaintiff should be drug tested before being allowed to return to work. Whitcomb later told the plaintiff that he had to undergo a drug test before he could return to work. Metro argued that this testimony by Scalzi was offered to explain why the plaintiff had left the employ of Metro—that it was not because of the accident but because he had refused to undergo a drug test. The court held that such testimony was hearsay and was overly prejudicial.

Although Metro claims that the court improperly "exclude[d] testimony of an ambulance driver and an employee of [Metro]" as hearsay and overly prejudicial,

we first point out that Metro never sought to introduce *the testimony* of the ambulance driver or of the employee. Rather, it attempted to introduce a statement allegedly made by an unknown ambulance driver to an employee, Whitcomb, through the owner of Metro, Scalzi, who was testifying at trial. The court ruled that such testimony by Scalzi was hearsay and prejudicial. In its ruling on Metro's motion to set aside the verdict, the court explained that this testimony, even if not hearsay, had very limited probative value and that whatever probative value it had was outweighed by the prejudice it could cause the plaintiff. The court also stated that the alleged statement by the unknown ambulance driver had no reliability. We agree with the court that the statement was both unreliable and unduly prejudicial. Accordingly, we need not determine whether the statement was hearsay.

Metro attempted to introduce a statement made by an unidentified ambulance driver that Metro should drug test the plaintiff before allowing him to return to work. Although Metro argues that this testimony was not hearsay and that it was offered to demonstrate why the plaintiff did not continue working, this unreliable statement did nothing to demonstrate why the plaintiff did not continue working for Metro. Scalzi certainly could have testified that he refused to permit the plaintiff to drive a taxi because the plaintiff refused to undergo a drug test. There was no need for the introduction to the jury of the unsupported statement that an unidentified ambulance driver thought that the plaintiff should have a drug test before driving a taxi. Such a statement, even if it were not hearsay or double hearsay, clearly was unreliable and highly prejudicial, having little probative value for the purpose for which it allegedly had been offered. The court acted properly in not permitting Scalzi to testify about such matters.

The judgment is affirmed.

In this opinion the other judges concurred.