JERMAINE D. DEAS *v.* ENRIQUE C. DIAZ ET AL.
(AC 33030)

DiPentima, C. J., and Gruendel and Lavine, Js.

Argued September 23—officially released November 15, 2011

*Kevin W. Smith*, for the appellant (defendant Transportation General, Inc.).

*John W. Mills*, for the appellee (plaintiff).

### Opinion

LAVINE, J. This appeal arises out of an action brought by the plaintiff, Jermaine D. Deas, to recover damages against Enrique C. Diaz, Valdermar Hernandez and the

defendant Transportation General, Inc., doing business as Metro Taxi,[1] in connection with an automobile accident. See *Deas* v. *Diaz*, 121 Conn. App. 826, 828–29, 998 A.2d 200, cert. denied, 298 Conn. 905, 3 A.3d 69 (2010).[2] The defendant appeals from the judgment of the trial court granting the plaintiff's postjudgment motion to reallocate damages, which originally were assessed against Diaz and Hernandez, to the defendant, pursuant to General Statutes § 52-572h (g) (1). On appeal, the defendant claims that the court erroneously concluded that the plaintiff satisfied the requirement of § 52-572h (g) (1) that the plaintiff make "good faith efforts . . . to collect from a liable defendant" before obtaining a reallocation of damages against another defendant. We affirm the judgment of the trial court.

Section 52-572h (g) (1) provides: "Upon motion by the claimant to open the judgment filed, *after good faith efforts by the claimant to collect from a liable defendant,* not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection." (Emphasis added.)

The following facts and procedural history are relevant to the defendant's appeal. On March 19, 2010, the

---

[1] Diaz and Hernandez also were defendants at trial and were defaulted for failing to appear. We refer to Metro Taxi as the defendant in this appeal, unless otherwise noted.

[2] In the underlying action, the jury found the defendant 80 percent negligent and Diaz and Hernandez 20 percent negligent. *Deas* v. *Diaz,* supra, 121 Conn. App. 829. The jury awarded the plaintiff a total of $25,500 for noneconomic damages and $19,116.50 for economic damages. Id. The defendant appealed, and this court affirmed the judgment of the trial court. Id., 845.

plaintiff timely filed a motion to reallocate damages pursuant to § 52-572h (g) (1). The plaintiff alleged that he had attempted to locate the other liable defendants, Diaz and Hernandez, for more than one year but was unable to do so. The plaintiff claimed that he was entitled to have a portion[3] of the uncollectible damages that were assessed against Diaz and Hernandez reallocated to the defendant.

In support of his motion, the plaintiff provided an affidavit from the private investigator whom he had retained to locate Diaz and Hernandez. The affidavit detailed the investigator's efforts, which included utilizing two "subscriber-only people-search databases" commonly used by law enforcement, contacting the state department of motor vehicles, searching the department of correction online database, visiting the last known residence of Diaz and Hernandez, and meeting with the rental agent for that apartment. The investigation revealed that the apartment building "seemed to be a 'revolving door of immigrants from everywhere,' " according to a postal delivery person, and that the apartment rental application was in " 'deep storage'," making it impractical to search for, according to the rental agent. Additionally, one of the subscriber only databases uncovered an out-of-service cellular telephone number for Hernandez. The investigator concluded that Diaz and Hernandez were not "current or recent Connecticut residents and that a nationwide search, within reasonable professional efforts, would be futile."

The defendant did not dispute the facts underlying the affidavit but argued that the plaintiff nonetheless

---

[3] Specifically, the plaintiff argued that the defendant was responsible for 100 percent of the uncollectible economic damages and 80 percent of the uncollectible noneconomic damages; see General Statutes § 52-572h (g) (2) and (3); plus interest pursuant to the plaintiff's offer of compromise. In total, the plaintiff sought to have $9833.69 in damages reallocated to the defendant.

failed to take "reasonable steps to locate these individuals . . . ." Specifically, the defendant argued that the plaintiff (1) did not contact the Pennsylvania motor vehicles department, despite the statement in the police report that the vehicle driven by Diaz was registered in Pennsylvania; (2) did not contact the cellular telephone company to attempt to obtain Hernandez' social security number; and (3) made insufficient efforts to obtain the rental application. After the plaintiff contested the feasibility of the defendant's suggestions, the court granted his motion to reallocate damages.

As a preliminary matter, we must determine the appropriate standard of review for the defendant's claim. The defendant argues that our review of the trial court's evaluation of whether the plaintiff made "good faith efforts" involves statutory construction and is therefore subject to plenary review. The plaintiff, however, argues that "what constitutes a *good faith* effort, much like what constitutes 'reasonable efforts' under other Connecticut statutes, is inherently a fact based inquiry" subject to the clearly erroneous standard of review.

"[I]n order to determine the appropriate standard of review for the defendant's claim in the present case, we first must ascertain whether the defendant is truly challenging the trial court's interpretation of the pertinent law, in which case our review is plenary . . . or whether [the defendant] is actually disputing the court's factual findings, in which case we review those findings for clear error." (Citation omitted.) *State* v. *Bonner*, 290 Conn. 468, 481, 964 A.2d 73 (2009). Whether the defendant made "good faith efforts" is a subjective, factual determination. See *Phillipe* v. *Thomas*, 3 Conn. App. 471, 474–75, 489 A.2d 1056 (1985). As such, "[t]he trier of fact, using the evidence at its disposal and considering the unique circumstances of each case, is in

the best position to make [this] individualized determination . . . ." *Ayantola* v. *Board of Trustees of Technical Colleges*, 116 Conn. App. 531, 539, 976 A.2d 784 (2009); id., 538 (holding that "the question of causation in a prima facie case of retaliation brought under [General Statutes § 46a-60] is factual in nature and thereby subject to the clearly erroneous standard of review").

The defendant does not argue that the trial court improperly interpreted the statute; rather, the defendant challenges the court's factual determination that the plaintiff made "good faith efforts" to locate Diaz and Hernandez. We therefore review the court's finding under the clearly erroneous standard of review. See *In re Melody L.*, 290 Conn. 131, 144–45, 962 A.2d 81 (2009) (review of trial court's determination of whether department of children and families made "reasonable efforts" to reunify child with parent under § 17a-112 [j] [1] is for clear error); *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 837, 3 A.3d 992 (2010) ("[w]hether a party has acted in bad faith is a question of fact, subject to the clearly erroneous standard of review").

We next consider the meaning of the phrase "good faith efforts," a matter of statutory construction over which our review is plenary. See *Pagett* v. *Westport Precision, Inc.*, 82 Conn. App. 526, 528, 845 A.2d 455 (2004). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . [W]e are mindful of the legislature's directive that, [i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be

construed and understood accordingly. General Statutes § 1-1 (a). . . . *State* v. *Dupigney*, 295 Conn. 50, 58–59, 988 A.2d 851 (2010); see also General Statutes § 1-2z. Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . In ascertaining legislative intent [r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense." (Internal quotation marks omitted.) *State* v. *Sunrise Herbal Remedies, Inc.*, 296 Conn. 556, 567–68, 2 A.3d 843 (2010).

Although § 52-572h does not define "good faith efforts," because "good faith" has a common legal meaning, we conclude that the phrase is clear and unambiguous. In *Phillipe* v. *Thomas*, supra, 3 Conn. App. 474–76, this court differentiated between a "good faith efforts" standard and a "reasonable efforts" standard in the context of a real estate contract that contained a mortgage contingency clause requiring the plaintiff to pursue a mortgage application with diligence. The court explained that "[t]he difference between the good faith and reasonable efforts standards is the difference between a subjective and an objective standard. Good faith . . . in common usage . . . has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. . . . It has been well defined as meaning [a]n honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. . . . *The determination of good faith involves an inquiry into the party's motive and purpose as well as actual intent. . . .*

"Reasonableness, on the other hand, is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. . . . Evidence of what is reasonable, however, may be relevant to determining one's good faith and is not excluded from playing a part in that determination. . . . Similarly, one's good faith may be relevant in ascertaining the reasonableness of his actions." (Citations omitted; emphasis added; internal quotation marks omitted.) Id.; see also *Bhatia* v. *Debek*, 287 Conn. 397, 412–13, 948 A.2d 1009 (2008).

In accordance with § 1-1 (a), we apply the definition of "good faith efforts" set forth in *Phillipe* for the purposes of the reallocation of damages statute, § 52-572h (g) (1). We emphasize that the legislature chose the subjective "good faith efforts" standard, rather than the objective "reasonable efforts" standard. As a result, the trial court is in the best position to make this determination, considering the unique circumstances of each case. See *Ayantola* v. *Board of Trustees of Technical Colleges*, supra, 116 Conn. App. 539.

After hearing argument, the court stated: "I think reasonable attempts have been made to locate [them]. I mean, [the plaintiff] could go on for years sending someone to Pennsylvania, you know, so I'm going to grant the motion, okay?" Although the court used the phrase "reasonable attempts" instead of "good faith efforts," we reiterate that "[e]vidence of what is reasonable . . . may be relevant to determining one's good faith and is not excluded from playing a part in that determination." *Phillipe* v. *Thomas*, supra, 3 Conn. App. 476. Although the court's explanation of its ruling was sparse, "[a]s an appellate court, we are entitled to presume that the trial court acted properly and considered all of the evidence." *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 286, 976 A.2d 750 (2009). On

the basis of our review of the record, we cannot conclude that the trial court's finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.